Duecker and another vs. Goeres and others.

erty, and left surviving him his widow, the proponent, and five adult children. He executed the will in question July 17, 1878, leaving everything to his widow. The will was offered for probate, and due execution thereof was proven; but four of the children contested the will on the ground of undue influence on the part of the widow. The will was admitted to probate in the county court of Sheboygan county, and upon appeal to the circuit court the same judgment was rendered, and from that judgment the contestants prosecute this appeal.

The cause was submitted for the appellants on the brief of *Martin Hughes* and *A. C. Prescott*, and for the respondent on that of *Francis Williams*.

---

DUECKER and another, Respondents, vs. GOERES and others, imp., Appellants.

*September 5 — September 26, 1899.*

(1) *Equity: Reformation of written instrument.* (2–5) *Transcript of justice's judgment: Failure to show date of rendition: Extinguishment of judgment by limitation: Guaranty: Measure of damages: Foreclosure of mortgages: Personal liability for deficiency: Limitations: Form of judgment.*

1. To warrant a court of equity in reforming a written instrument, the facts calling for it must be established by clear and satisfactory evidence and beyond all reasonable controversy.

Duecker and another vs. Goeres and others.

2. The transcript of a justice's judgment filed in the office of the clerk of the circuit court of the county where it was rendered, pursuant to sec. 2900, Stats. 1898, for the purpose of giving such judgment the status of a circuit court judgment till ten years from the date of its rendition, pursuant to sec. 2902, is a nullity unless the statutes in relation to such transcript and the filing thereof are followed in every material particular.

3. The provisions of sec. 3669, Stats. 1898, relating to the form of transcripts of justice's judgments, and sec. 2902, limiting the life of a transcripted judgment, make the date of the rendition of the judgment in justice's court a material part of such transcript.

4. A transcript of a judgment which did not show the date of its rendition was filed in the office of the clerk of the circuit court of the proper county, and more than six years after such rendition the owner assigned such judgment to another, guaranteeing that it was a legal judgment, and secured such guaranty by a mortgage on real estate. *Held:*

(1) The filing of the transcript was a nullity.

(2) The judgment was extinguished by the six-year limitation upon the enforcement of a justice's court judgment.

(3) The condition of the mortgage was breached when made, rendering the mortgagor liable for such damages as must reasonably have been in the contemplation of the parties at the time of the making of the guaranty as the probable result of such a breach.

(4) The proper measure of damages in the circumstances stated is the full consideration paid for the judgment, with interest.

5. The mortgage executed under the circumstances stated in the foregoing was foreclosed more than six years after the cause of action for the breach of guaranty accrued. Judgment was rendered in form for a personal recovery, and it also provided for a deficiency judgment. The mortgage was also erroneously reformed, though the amount of the liability secured was not thereby changed. *Held:*

(1) The judgment, being right on the evidence, except as to the provisions for a personal recovery, must be affirmed except as to such provisions, though rendered on an erroneous theory as to the character of the mortgage.

(2) The statute of limitations upon the personal liability having extinguished it, the provisions in the judgment for a personal recovery, whether by the judgment as originally rendered or a deficiency judgment to be thereafter rendered, were erroneous.

(3) Sec. 3162, Stats. 1898, prescribing the form of a foreclosure judgment, is mandatory, and provides for a personal recovery only by means of a deficiency judgment, and in that case only against

the person personally liable. The rendition of a judgment other-
wise is erroneous, though where such judgment is in the form of a
personal recovery and also authorizes a judgment for a deficiency,
where such judgment is proper, the two will be so construed as to
give the provision for a personal recovery without a deficiency
judgment the effect, only, of a determination of the amount se-
cured by the mortgage.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Manito-
woc county: N. S. GILSON, Circuit Judge. *Modified and
affirmed.*

Action to reform a mortgage and foreclose it as reformed.
The issues made by the pleadings are covered by the find-
ings of fact, which are substantially as follows:

May 31, 1880, defendant *Henry Goeres,* being then the
owner of a judgment rendered in justice's court against one
Christman for $142.24 and costs, filed a transcript thereof,
not stating the date of the judgment, in the office of the
clerk of the circuit court where some lands owned by the
judgment debtor lay, and thereafter, about February 10,
1888, being indebted to plaintiffs in the sum of $103, traded
such judgment to them for a discharge of his said indebted-
ness and $73.12, which aggregated more than the amount
due on the judgment, $75 having been paid thereon not
earlier than August 4, 1885, or later than June 8, 1887,
*Goeres* agreeing as part of the transaction to guarantee that
the judgment was good and collectible and to secure such
guaranty by a mortgage on some lands owned by him.
There was a further agreement that *Goeres* should attend
to the collection of the judgment without cost to the plaint-
iffs. Intending to carry out the agreement stated, *Goeres*
assigned the judgment to plaintiffs in writing and made and
delivered to plaintiffs the mortgage in suit, in which it was
specified that its purpose was to secure "the legality of the
judgment" and that it was to be null and void "if such

judgment is legal and correct." Further, contrary to the facts, the mortgage contained the usual provisions applicable to a mortgage to secure an indebtedness on a promissory note of $200. The parties to the transaction did not comprehend the meaning of the words "legality" and "legal and correct," and on that ground, and through forgetfulness on the part of *Goeres* respecting the precise verbal agreement as to guaranteeing the judgment to be good and collectible and that he would attend to its collection, the guaranty was not clearly expressed in the mortgage, the parties relying on the words "legality" and "legal and correct" to express the idea of *good and collectible*. After the transaction was consummated *Goeres* made endeavors from time to time to collect the judgment in accordance with his verbal agreement to do so, but failed to collect any part of it. The judgment was in fact valueless because of prior liens on the realty of the judgment debtor. Defendant *Balz*, with knowledge of plaintiffs' rights, became the owner of the mortgaged premises before the commencement of this action.

There were other findings appropriate to a foreclosure judgment, and conclusions of law that plaintiffs were entitled to a reformation of the mortgage in accordance with the facts, and to a judgment of foreclosure as prayed for. There was evidence all one way that in order to induce plaintiffs to take the judgment, *Goeres* represented that it was a lien on real estate of the judgment debtor prior to that of an outstanding mortgage, and that the mortgagee would pay the judgment to save his claim. The finding was to the effect that the judgment, if valid, would have been subject to the mortgage instead of the mortgage subject to the judgment. The answer contained a plea of the statute of limitations as to any claim of personal liability against *Goeres*. Judgment was rendered, following the findings, for a recovery from *Goeres* of the amount of the liabil-

ity secured by the mortgage as determined by the judgment, and costs; and it also contained the usual provisions of a foreclosure judgment and for a judgment for deficiency.

For the appellants there was a brief by *G. G. & C. H. Sedgwick,* and oral argument by *G. G. Sedgwick.*

For the respondents there was a brief by *Nash & Nash,* and oral argument by *L. J. Nash.*

MARSHALL, J.   The first assignment of error which needs consideration goes to the question of whether the findings of fact, as to *Goeres* having guaranteed the judgment to be good and collectible, agreed to give a mortgage to secure such guaranty, given the mortgage in suit in fulfillment of such agreement, and used the words therein "legal and correct" as the equivalent of the words "good and collectible" by mutual mistake of himself and plaintiffs, are supported by the evidence.   The conclusion to which we have arrived on the whole case renders that assignment of error of little importance, but it is deemed best to discuss and decide the question involved.

The parties to the transaction which resulted in the giving of the mortgage all testified on the trial, and on their evidence the reformation was decreed.   Plaintiffs testified, in substance, that *Goeres* agreed to give the mortgage to secure the payment of the judgment assigned; that *Goeres* drew the mortgage and before its delivery read it to them, while one of them looked over to be certain it was read right; that one of them also read the mortgage; that they knew what was in it, but did not fully understand the words used, though they made no mention of that fact or complaint that the instrument was not according to the agreement till about the time of the commencement of this action, some nine years after the transaction.   *Goeres* testified that during the negotiations leading up to the assignment of the judgment to plaintiffs one of them remarked that they did not

know whether the judgment was legal, whereupon he agreed to secure them as to that by a real-estate mortgage; that he drew, executed, and delivered the mortgage in suit for the purpose of fulfilling such agreement; that the words "legal and correct" were used understandingly and in accordance with the agreement; that he read the mortgage to plaintiffs at the time it was presented to them, and that they did not then, nor thereafter, till about the commencement of this action, complain that it did not express the understanding of the parties. The evidence is all one way as to plaintiffs having knowledge of the contents of the mortgage when it was delivered to and accepted by them. True, they testified that they acted through mistake as to the meaning of the words "legal and correct," but *Goeres* testified that he acted in the belief that the words used would bind him for the validity of the judgment according to the agreement. There are many circumstances bearing on the credibility of the evidence referred to, but rather more that corroborates the testimony of *Goeres* than that of plaintiffs. They were business men and leading citizens of the town in which they resided. They kept their books and did their business, using the English language, so it is not easy to understand how they could have misunderstood words of agreement to be responsible for the legality of the judgment for words guaranteeing the payment of it. It is significant that the guaranty was for the payment of the judgment, according to the testimony of plaintiffs. The idea that the agreement was that *Goeres* should guarantee the collectibility of the judgment, which found a place in the findings of the court, does not appear to be sustained by any evidence, and on the question of mutual mistake the evidence is at least evenly balanced, if it does not preponderate against the findings complained of.

Testing the findings under consideration by the familiar rule that to warrant the reformation of a written instru-

ment because of fraud upon the one side and mistake upon the other, or of mutual mistake, the facts in that regard must be made to appear by the most clear and satisfactory evidence so as to leave no room for reasonable controversy on the subject, they cannot be sustained; indeed, they hardly bear the test applicable to findings of fact in ordinary civil actions.

But it is said by respondents that, conceding that the reformation of the mortgage should not have been decreed, the judgment appealed from is right because the assigned judgment was not legal and correct; that the transcript filed did not show when the judgment was rendered in justice's court and was therefore a nullity; hence that the judgment was extinguished by the running of the statute of limitations before the assignment, it being then more than six years old. Because of the age of the judgment when assigned, obviously whether it was then an enforceable liability depends upon whether a proper transcript of it was filed in the office of the clerk of the circuit court of the county where it was rendered, before it was barred by the statute as a justice's court judgment.

Sec. 3669, Stats. 1898, requires the form of such a transcript to exhibit the date of the rendition of the judgment. That is material, as only existing judgments can be transcripted to the circuit court, and their life there is limited, not to a period commencing with the filing of the transcript in the circuit court, but with the date of the rendition of the judgment in the court below. Sec. 2900 provides that upon the filing in the office of the clerk of the circuit court of the duly certified transcript of a judgment for more than $10 rendered by a justice of the peace for his county, it shall be docketed in, and thereafter be deemed the judgment of, said circuit court, except that no execution shall be issued or action brought thereon after it ceases to be a lien on real estate under sec. 2902, which limits such lien to ten years

from the rendition of the judgment. It is clear that those parts of a transcript of a justice's judgment necessary to show that it is an enforceable liability at the time the transcript is filed in the circuit court, and to show when that liability will cease notwithstanding the filing of the transcript, are material and must be complied with in order to give it the effect mentioned in sec. 2900. It is elementary that statutes of the kind under consideration must be strictly complied with in every material particular, or the attempt to obtain the benefits of them will fail. Freeman, Judgments, § 396.

The foregoing leads to the conclusion that the filing of the transcript was a nullity, and because the judgment was more than six years old when assigned, and had not been seasonably transcripted to the circuit court in order to give it the status of a judgment of said court, it was barred by the statute of limitations, and not "legal and correct" within the meaning of those words as used in the mortgage. So the result is that, notwithstanding the conclusion here is against the respondents as to the determination of the court reforming the mortgage, it must be upheld as enforceable for the damages sustained by the plaintiffs because of the invalidity of the judgment.

The loss being entire, the measure of damages in case of a failure of title to personal property applies to the facts of this case. The proper rule, by the great weight of authority, is the consideration paid, with interest from the time of such payment. Suth. Dam. (2d ed.), § 669; *Noel v. Wheatly*, 30 Miss. 181; *Eaton v. Mellus*, 7 Gray, 566. The amount of the mortgage claim as found by the trial court is the same as the amount of plaintiffs' damages, by the rule above stated. Therefore appellants are not prejudiced by the judgment appealed from so far as it merely enforces the mortgage against the property therein described, notwithstanding the erroneous decree of the court reforming

it so as to make it a security for the collectibility of the as-
signed judgment instead of its validity.

What has been said renders the mortgage as binding on
*Balz* as on *Goeres*. The transcript of the judgment, by the
terms of the mortgage, was brought home to *Balz*. He took
title with constructive knowledge of the fact that such judg-
ment was invalid. Moreover we see no reason on the evi-
dence for disturbing the finding of the trial court that *Balz*
purchased with .actual knowledge of the plaintiffs' claim as
to the liability of his vendor under the mortgage.

The further point is urged by appellants that the personal
judgment for the deficiency was error. The obligation which
the mortgage secured was on a verbal contract of guaranty.
Such contract was breached as soon as made, and the cause
of action upon it was then complete. Therefore the six-year
statute of limitations commenced then to run against such
liability, and such statute operated to extinguish it as a per-
sonal claim in six years after it accrued. That left no foun-
dation for an action at law on the contract or for a personal
judgment, though it did not prevent the foreclosure of the
mortgage, for the twenty-year statute governs as to that.
*Wiswell v. Baxter*, 20 Wis. 680; *Whipple v. Barnes*, 21 Wis.
327; *Knox v. Galligan*, 21 Wis. 470; *Slingerland v. Sherer*,
46 Minn. 422; Jones, Mortgages, § 1204. There is some con-
flict in the authorities on this question, but the better reason-
ing and the great weight of authority is in accord with the
doctrine stated, which early became a part of the law of this
state as indicated in the cases cited. Under the old practice
there were two remedies for the collection of a debt secured
by a mortgage: One at law upon the contract, and the other
in chancery to foreclose the mortgage. The former was to
enforce the personal liability, and the other to realize upon
the security. Personal judgments were not rendered in
chancery. The remedy there was confined to obtaining the

benefit of the mortgaged property. The remedy by personal action and that by foreclosure still exist and may now be pursued separately, or the former remedy may be administered in the foreclosure action because the statutes so provide; but there are still the two distinct kinds of relief, and the right to one may be barred without affecting the right to the other. If a person desires to enforce his rights at law, to enforce the purely personal liability he must bring his action within the period limited for that purpose, otherwise he will be limited to the right to enforce the mortgage as if it were not given to secure any personal liability. By the wording of the statute the judgment for deficiency goes only against the person personally liable. Obviously, looking at that alone, when the personal liability no longer exists the power to render a personal judgment in the foreclosure action cannot be exercised, because there is no longer any one personally liable to satisfy the conditions of the statute.

The judgment is also erroneous because, instead of merely fixing the amount of the mortgage claim as required by statute (sec. 3162, Stats. 1898), it is in the form of a personal judgment. The statute is mandatory by its terms and by sec. 3154. It has been held that where the judgment is personal in form and is followed by an order for a deficiency judgment, the two parts should be construed together so as to give the first part the effect of a strict compliance with sec. 3162, and render the error harmless. *Welp v. Gunther*, 48 Wis. 543; *Boynton v. Sisson*, 56 Wis. 401; *Crocker v. Currier*, 65 Wis. 662; *Laycock v. Parker*, 103 Wis. 161. But that 'rule cannot apply where the order for the deficiency judgment must be stricken out because there was no one personally liable or for any other cause rendering a personal judgment improper.

*By the Court.*— The judgment appealed from is modified by striking out the order authorizing a judgment for de-

ficiency, and so it will fix the amount due on the mortgage claim without any provision for its personal recovery, and as modified it is affirmed. The costs against respondents in this court are limited to attorney's fees, clerk's fees, and $25 for printing.