## CAIN v. COLLIER.

### Opinion delivered September 23, 1918.

1. REFORMATION OF INSTRUMENTS—GROUNDS.—Equity will reform a written instrument where there is a mutual mistake or where there has been a mistake of one party accompanied by fraud or other inequitable conduct.

2. SAME—ADMISSIBILITY OF EVIDENCE.—Parol evidence is admissible in a suit to reform an instrument.

3. SAME—SUFFICIENCY OF EVIDENCE.—To warrant reformation of an instrument, the evidence must be clear, unequivocal and convincing.

Appeal from Faulkner Chancery Court; *Jordan Sellers,* Chancellor; affirmed.

STATEMENT OF FACTS.

This is a suit in equity for the reformation of a deed. The plaintiff, P. C. Cain, alleges that he bought several parts of lots of ground in the city of Conway from J. D. Collier, and that by a mistake on his part, coupled with fraud on the part of Collier, a part of the ground so purchased by him was omitted from the deed.

According to the testimony of the plaintiff himself, sometime in August or September, 1915, he purchased a

wagon yard in the city of Conway from J. D. Collier for the price of $3,500. Before purchasing the property, Collier took him through the wagon yard, in the presence of Tom Davis and Arthur Brown, and showed him the boundary lines. The ground purchased, according to the way Collier pointed it out to Cain, was 75 feet wide and extended from East Oak street on the south to Van Ronkle street on the north. Collier told Cain that the ground purchased extended from street to street. The deed executed by Collier to Cain conveying the ground did not embrace a small triangular strip on the north side which lies between the parcel of ground embraced in the deed and Van Ronkle street. Collier put Cain in possession of this little triangular strip, and he used it for sometime before he discovered that it was not embraced in the deed. The first Cain knew of not having a deed to this little strip was when Collier served notice on him to vacate it. Cain first talked with Collier's wife about purchasing the wagon yard and offered her $3,500 for it. She told him that she could not close the trade until her husband came home. When Collier came home he wrote Cain a letter to come down and look at the land. Tom Davis and Arthur Brown both corroborated the testimony of the plaintiff, Cain. They stated they were present when Collier pointed out the boundary lines of the wagon yard to Cain, and that Collier told Cain that he was selling him everything from street to street; that the wagon yard extended from East Oak street on the south to Van Ronkle street on the north. Davis is a brother-in-law of Cain and Cain is on the bond of Brown to a medicine company for $600. The bond is for medicine purchased by Brown of the company.

It was also shown by these witnesses that the property was used as a wagon yard, and would be damaged about $2,000 to have the triangular strip in controversy cut off from the tract and that end of it closed up. Collier only had a lease for ninety-nine years to the triangular

strip, and they said this would damage it from $500 to $1,000.

C. B. Cain, a son of the plaintiff, testified that Collier came to his father's house in the summer of 1915 to see about trading his father a wagon yard in Conway for his farm. Collier described the wagon yard to the plaintiff, saying that it extended from Holt's wagon yard on one side to Hartley's wagon yard on the other and from street to street. This conversation occurred before plaintiff purchased the wagon yard. Joe Hovis, a son-in-law of the plaintiff, was present and heard this conversation. He testified to the same state of facts as were testified to by C. B. Cain. At that time Hovis had not married the daughter of plaintiff, but was at plaintiff's house visiting his daughter. These two witnesses also testified that they came to Conway the day Collier turned the wagon yard over to plaintiff and heard a conversation between them in which Collier stated to the plaintiff that he was turning over the possession of the yard from street to street and from Holt's to Hartley's.

On behalf of the defendant, J. D. Collier, his wife testified that, as his agent, she negotiated with the plaintiff in regard to the sale of the wagon yard on the property in question; that she agreed to sell the property to him for $3,500 subject to the approval of her husband, who was then in the State of Alabama; that she only agreed to sell him the property that was afterwards deeded to him, and that nothing was said about the boundary lines.

According to the testimony of the defendant himself, the triangular strip of land in controversy was never a part of the wagon yard, and he never represented to the plaintiff that he owned it and never agreed to sell it to him. He purchased the wagon yard in 1912 and used or rented it as a wagon yard for over two years before he leased the little strip in controversy from the city of Conway. The lease was for a term of ninety-nine years and the consideration was $15. The defendant put a mule

pen on the triangular strip of ground in controversy which he used himself and rented out the wagon yard. The mule pen had no connection with the wagon yard. The defendant furnished the plaintiff an abstract of title to the property before the deed was made. The abstract showed the property to be 75 feet wide by 150 feet long. The property embraced in the abstract is the property described in the deed.

According to the testimony of L. M. Sales, he was running the wagon yard at the time Collier sold it to Cain. The yard was 75 feet wide and 150 feet long. At the time Sales rented the wagon yard from Collier, Collier told him that the little triangular strip in controversy did not go with the wagon yard, but that he might use it when he, Collier, was not using it. Sales told Cain before he purchased the wagon yard that this little triangular strip did not go with the wagon yard, at the time he was showing Cain the boundary lines at his request. W. H. Gibbs was present when this conversation was had between Sales and Cain, and he corroborated in every respect the testimony of Sales. Gibbs formerly owned the wagon yard and operated it. He bought it from Collier and afterwards sold it back to him. Collier, Sales and Gibbs, all testified that the strip in controversy had never been regarded as part of the wagon yard, and was not necessary for its operation as a wagon yard, and had never been used as a part of it. According to the testimony of Sales and Gibbs, Sales expressly told Cain that the triangular strip of ground in controversy did not go with the wagon yard, and that Collier only had a lease on it.

The chancellor found the facts in favor of the defendant and entered a decree dismissing the plaintiff's complaint for want of equity. The case is here on appeal.

*J. C. & Wm. J. Clark,* for appellant.

1. There was a mutual mistake and fraud and reformation should have been granted. The evidence is strong, clear and decisive. 132 Ark. 227.

2.   The doctrine of *caveat emptor* does not apply. 39 Cyc. 1282.

*Robins & Clark,* for appellee.

1.   There was no fraud and no mutual mistake, nor is the evidence strong, clear and conclusive. 200 S. W. 139. An abstract was furnished and the contract was in writing. 71 Ark. 185; 78 *Id.* 177.

2.   Appellant had ample opportunity to examine the description of the property, and failing to do so he can not complain. 89 Ark. 309; 104 *Id.* 475, 487; 15 *Id.* 184, 194.

3.   The proof offered by appellant does not measure up to the standard required. 71 Ark. 614; 200 S. W. 139; 104 Wis. 29; 80 N. W. 91.

HART, J., (after stating the facts).   The law of the case is settled by the opinion in *Welch* v. *Welch,* 132 Ark. 227, 200 S. W. 139, in which most of our earlier decisions on the question are cited. In that case we held that equity will reform a written instrument where there is a mutual mistake or where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the other party. We also held that parol evidence is admissible in a suit to reform an instrument in cases like this but that the evidence to warrant reformation must be clear, unequivocal and convincing. Tested by these well known principles of law, we are of the opinion that the decree should not be reversed.

It is true a greater number of witnesses testified that Collier pointed out the boundary lines of the wagon yard saying that they extended from street to street and that this would include the little triangular strip of ground in controversy. They also stated that the wagon yard could not be successfully operated without this strip because a wagon could not be turned around in it. It was shown, however, that the wagon yard was 75 feet wide and 150 feet long and it is fairly inferable that wagons could be turned around in a yard of this size. Be-

sides that, three witnesses, including the defendant, testifie that they had operated the wagon yard without the triangular strip and that wagons had been turned around in it. Two of these witnesses testified that one of them told the plaintiff, before he purchased the wagon yard, that the little triangular strip in controversy was not a part of the wagon yard and that Collier only had a lease on it. Collier furnished Cain an abstract of title to the property sold him and this showed the property to be 75 feet wide and 150 feet long. The abstract itself conveyed to the plaintiff notice that the strip of ground was in the form of a rectangle and excluded the idea that the small triangular strip was a part of it. Moreover, it was not likely that the plaintiff would have agreed to give a warranty deed to the strip of ground to which he only had a lease. When all the testimony in the case is read and considered together, it can not be said that the plaintiff has proved his case by testimony of such a clear, unequivocal and convincing character as to justify a reformation of the deed, and, especially, when to do so would require us to reverse the findings of fact on that issue made by the chancellor.

The decree will, therefore, be affirmed.