GRIGSBY v. BEDWELL.

Opinion delivered November 4, 1918.

1. TRUST—ENFORCEMENT.—Where a guardian purchased lands with the funds of his ward, and took title in his own name, but subsequently made a final settlement of his guardianship, and after the ward attained her majority she executed a receipt to the guardian acknowledging full settlement of all money and other property due her, the chancellor properly refused to declare a trust in the ward's favor.

2. CANCELLATION OF INSTRUMENT—SUFFICIENCY OF EVIDENCE.—Evidence of fraud in procurement by a brother from his sister of a deed of land *held* not sufficiently clear, unequivocal and undisputed to warrant the cancellation of the deed.

Appeal from Lawrence Chancery Court, Eastern District; *Geo. T. Humphries,* Chancellor; reversed in part.

*W. P. Smith* and *E. H. Tharp,* for appellant.

No fraud was practiced by appellant, but the deed was made of appellee's own free will and accord. 97 Ark. 268; Story Eq. Jur. 203, § 191; 2 Kent, Com. (4 ed.) 484-5. She signed the deed and acknowledged it after her attention had been called to the fact that she was conveying more land than she now claims. 40 Ark. 219; 85 *Id.* 363; 173 U. S. 17; 102 Ark. 363.

*W. A. Cunningham,* for appellee.

1. Grigsby was trustee of an express trust and when he converted $950 in cash which he held for his wards, into lands, his wards had the right either to sue for the money or follow it into the lands. The right to follow the trust fund continues as long as the fund can be traced and identified. 27 Ark. 197; 47 *Id.* 539; 92 *Id.* 59. A deed of gift does not make the recipient an innocent purchaser. 5 Cyc. 719.

2. Fraud was proved. 38 Ark. 434; 78 *Id.* 116. Eighteen hundred dollars' worth of property was obtained from a confiding sister for $320. The finding of the chancellor is sustained by the evidence.

SMITH, J. This suit was brought by appellee to cancel a deed executed by her to her brother, the appellant, on the ground that its execution had been procured by fraud. Appellee admits that she voluntarily executed the deed for the sum of $320, the consideration recited in the deed, but she alleged that it was her contract and intention to convey only an undivided one-fourth interest in the northeast quarter of the northeast quarter, of section 22, township 15 north, range 1 west, this being the land in which she inherited an interest from her mother. But, in addition to that interest, the deed also described and conveyed an undivided one-third interest in four other tracts of land, containing 230 acres, and which interest she alleged was worth at the time the sum of $1,000. In support of the allegations of her complaint, appellee testified that, on February 3, 1914, the date of the deed, she was barely eighteen years old, and wholly unfamiliar with

land descriptions and relied upon the representations of appellant, her brother, that the deed conveyed only the land which she had contracted to sell.

Appellant and appellee were the children of J. H. Grigsby, who had married five times, his first wife leaving one child, the appellant. The second wife left four children, of whom appellee was one. The third wife to whom J. H. Grigsby was twice married left three children, and his fourth wife, who survived him, had one child. Appellee's mother owned the forty-acre tract described above in her own right, and also owned an undivided interest in certain other lands known as the Childers land, which consisted of an eighty-acre and a forty-acre tract.

Upon the death of his second wife, J. H. Grigsby was appointed guardian of the minor children of this wife, and he sold the interest of these minors in this Childers land. In 1910, J. H. Grigsby purchased through J. N. Childers 240 acres of land in sections 11 and 14, and took a deed to himself for the 120 acres in section 11, and caused a deed to be made to his wards for the 120 acres in section 14.

Appellee arrived at the age of eighteen on November 24, 1913, and married Leo Bedwell in December following, which marriage was so much against her father's wish that he never spoke to her again until a short time before his death. In 1901, J. H. Grigsby, while living with his second wife, divided his lands among his children then *in esse,* these deeds containing a clause providing for a right of survivorship among the grantees, and reserving to the grantor the use of the lands for his natural life. The complaint contained a prayer for the cancellation of the deed from appellee to appellant for fraud, and, having made the other heirs parties to the cross bill, there was a prayer that a constructive trust be declared in appellee's favor in the lands bought by her father and guardian with her money, and for partition of the lands. The court made an order cancelling the deed upon the refund of the $320, with interest, but refused to make any order

in regard to the lands purchased by J. H. Grigsby from Childers. The court also decreed that the lands deeded to the older children were an advancement, and decreed title to the children to certain lands owned by J. H. Grigsby at the time of his death, and an appeal has been prosecuted by appellant to reverse the action of the court in cancelling the deed to him, and a cross appeal has been prosecuted by appellee to review the action of the court below in refusing to declare a trust in accordance with her prayer in the cross complaint.

In support of the cross appeal, it is contended that J. H. Grigsby was the trustee of a resulting trust, because of his purchase of lands with the funds of his ward, the title to which he took in his own name. But, without any further statement of the facts in regard to this issue, it suffices to say that J. H. Grigsby made a final settlement of his guardianship, which was made under the provisions of section 3822, Kirby's Digest, which was approved by the court, and after appellee had attained her majority and had married, she and her husband executed a receipt to the guardian acknowledging full settlement of all money and other property due her.

The real question in the case is whether the deed should be cancelled because of the mistake of one party accompanied by the fraud of the other. The law of that subject was fully discussed in the recent case of *Welch* v. *Welch,* 132 Ark. 227, and need not be restated, but, applying the test of that case to the facts of this, we have concluded that the testimony is not sufficiently clear, unequivocal and undisputed, to warrant the cancellation of the deed.

Counsel for appellee in their brief invoke the doctrine of the cases of *Million* v. *Taylor,* 38 Ark. 428; *Reeder* v. *Meredith,* 78 Ark. 111, and *Giers* v. *Hudson,* 102 Ark. 232, to support the action of the court below in cancelling the deed. These cases do not announce the doctrine, however, that transactions between a brother and a sister, or other persons occupying relations of trust and confidence, will be invalid because of that relationship,

but the doctrine is that, because of this relationship, the transactions will be more closely scrutinized. But the purpose of this scrutiny is to ascertain the facts and the real intention, and not to defeat the transactions of the parties, when the transactions are free from fraud and imposition induced by reason of the relation of the parties.

Counsel for appellee argue that J. H. Grigsby instigated his son, the appellant, to procure the deed from the sister, the appellee, and conspired with him to obtain from his sister a deed to an interest in lands worth from $1,000 to $1,800 for a consideration of $320, because of the objectionable marriage. But there is scarcely any substantial evidence to support this theory, and the case presents no question of confidence abused in the relation of a father to his daughter, for their estrangement was complete.

Any wrong done, or confidence betrayed, must be charged to the brother and not to the father, and we think the testimony fails to show that the execution of the deed was procured by fraud. The testimony is conflicting as to the value of the land conveyed, although it is certain that it is worth several times the sum named in the deed. But it must be remembered that the conveyance was made in the lifetime of J. H. Grigsby, and most of the land conveyed was subject either to his right of curtesy or to the life estate reserved in his deeds, and there was testimony that appellee stated prior to and at the time of the execution of the deed that she would rather have $320 in money than to wait until the death of her father and then get the land, and there was testimony that she had offered to sell the interest conveyed by the deed to another party for the sum of $320, as her husband needed that sum of money in connection with a business venture upon which he was about to engage. This testimony was denied by appellee, however.

Appellee testified that she did not know when she signed the deed just what her interest was, but she admits that she knew she had some interest in lands in addition to the forty-acre tract which she says she intended to

convey, and it is not contended that appellant made any misrepresentations in regard to the interest which appellee in fact owned. Dewey Grigsby, a full brother of appellee, and a half-brother of appellant, testified that appellee knew what interest she was deeding to appellant, and had attempted to sell this interest to other parties.

Appellee met appellant by appointment for the purpose of executing and delivering the deed, and she was accompanied by her husband, who joined in the execution of the deed. She admitted that the notary public who took the acknowledgment asked her if she knew what she was doing, and she testified that she answered that she was conveying her interest in the forty-acre tract of land which she had inherited from her mother. She admitted that the notary then stated, "There seems to be more than forty acres mixed up in it." And she stated that she then turned to appellant and asked him about the deed and whether it contained more land than she agreed to sell, and that appellant answered that he did not know, as his father had fixed up the paper, and that she then signed the deed because her father had made some threats against her husband before her marriage, and that she thought if she did sign the deed her father would not give her any more trouble, and that her father might think, if she did not sign the deed, that it was because her husband was contrary, and her failure so to do might cause more trouble. It may be observed, however, that the threat said to have been made had no relation to the execution of the deed. Appellee's husband substantially corroborates her in regard to the circumstances attending the execution of the deed.

The notary public testified that appellee stated she was conveying her interest in forty acres, but on further examination testified that he would not be positive whether appellee stated she was deeding her interest in forty acres, but he testified that he "told her she was signing a deed to her interest in everything up there," and that he read over to her the calls of the land set out in the deed. Other witnesses who appear to have no in-

terest in the litigation, and whose testimony does not appear to be contradicted, testified that, after the execution of the deed, appellee said that she sold the land because she wanted the money then, and did not want to wait until her father died to get her interest in the land.

Appellant himself testified that the contract was entirely free from fraud, and there was no testimony of special confidence, except the fact that the parties were brother and sister.

There are a few other circumstances having some relevancy, but we have stated the principal facts in the case, and we do not think the testimony recited warranted the action of the court below in cancelling the deed. The decree to that effect will be reversed, and the cause will be remanded with directions to vacate the decree cancelling the deed, and to dismiss the complaint as being without equity, and the decree on the cross appeal is affirmed.