FAGAN v. GRAVES.

Opinion delivered April 25, 1927.

1. REFORMATION OF INSTRUMENTS—SUFFICIENCY OF EVIDENCE.—In order to justify reformation of a deed or written instrument on the ground of fraud or mistake, the evidence of such fraud or mistake must be clear, unequivocal and decisive.

2. REFORMATION OF INSTRUMENTS—MISTAKE AS TO BOUNDARY.— Where plaintiff executed a deed to an adjacent proprietor in settlement of a boundary dispute, the fact that he made a mistake in measurement of his lot did not show a mutual mistake or warrant a reformation of the deed.

Appeal from Garland Chancery Court; *W. R. Duffie,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This suit was brought to correct the description, alleged to have been made by mutual mistake, in two certain deeds, one from M. Fagan and wife to Jane Fagan and the other from Jane Fagan to Mollie Graves, her daughter, made to effect and carry out a compromise settlement between M. Fagan and his mother, Jane Fagan.

M. Fagan purchased, in 1904, lots 1 and 2, of Moore and Shultice Subdivision of lot 1, block 8, city of Hot Springs, taking the title in his own name. In January, 1924, Jane Fagan, his mother, sued him in the Garland Chancery Court to divest the title out of him and invest

it in her, alleging that she had furnished the money to purchase the lots, which should have been conveyed to her, but that he had fraudulently taken the title in his own name, contrary to the instructions given him.

After Jane Fagan's deposition had been taken in the suit, a family conference was held, at which Peter Ganter and R. C. Barrow were present, and a compromise of the case agreed upon, under the terms of which appellant was to convey to his mother, Jane Fagan, 6 feet off the east side of lot 2 and all of said lot 1, except 6 feet off the northeast side thereof, fronting on Crescent Avenue; and appellant executed to Jane Fagan a deed to said lot 1 and 6 feet off lot 2, she in turn conveying it to her daughter, Mollie Graves.

Appellant contends in this suit that the description of the lot in the deed should be so corrected as to allow him a small store-room located in the southeast corner of said lot 1, it being the intention of the parties, at the time of the compromise settlement, that he should retain the land upon which the store was situated. The deeds were drawn up by Ganter and Barrow, or one of them—Barrow, in fact—to carry out the terms of the compromise, and were submitted to Jane Fagan's attorney, A. B. Belding, who corrected, by interlineation and erasure, the description in one of the deeds, making it read correctly, lot 1, etc., of Moore and Shultice's Subdivision of lot 1, block 8, of the Hot Springs Reservation, instead of lot 1, etc., block 8, of the Moore and Shultice Subdivision, block 1, of the Hot Springs Reservation. Witness said he made no other corrections in the deeds, and the deed from Jane Fagan to Mollie Graves appears to have been executed with the erasures and any interlineations just as he made them to correct the descriptions, and the deed had been recorded and was made an exhibit to his deposition. The deed from M. Fagan and his wife to Jane Fagan contained identically the same description as the deed made an exhibit to his deposition, showing that the same changes had been made therein as he made in correcting the other deed. As he remembered it, the

deeds were executed after the interlineations and erasures were made, without new ones being written.

Several witnesses testified, and all understood that the deeds were to be executed conveying the lots so that Jane Fagan would get a 6-foot strip off the east side of lot 2, and all of lot 1 except 6 feet off the northeast side of said lot fronting on Crescent Avenue, and the deeds were made accordingly. Some of the witnesses testified, as did appellant, that it was the intention that he should have the land upon which the store building was located in the southeast corner of lot 1, the 6 feet around the storehouse. He stated he was to have the land on which the storehouse was located and six feet around the store.

One of the arbiters or referees, Peter Ganter, testified that it was the intention at the time, and so expressed by Jane Fagan, his mother, since deceased, in the conference that "Bud," M. Fagan, should have the storehouse. He stated, however, that he and M. Fagan had gone out and stepped the lots off, and understood that the 6 feet retained on the east side of lot 1 would leave the storehouse upon M. Fagan's division of the lots.

The other arbiter, Barrow, said: "After some controversy it was agreed that M. Fagan was to transfer to his mother lot 1, and he was to accept six feet on the side of this place where he said the store stood on, and he was to give six feet from lot 2 for that, for the six feet the store stood on; it seems like he said he and Ganter had been down there and stepped this off and he found out it would take six feet to get this store."

The chancellor found that the testimony did not show a mutual mistake of fact made in the conveyances effecting the compromise settlement, and dismissed both the complaint and the cross-complaint for want of equity, and the appeal is prosecuted from the decree dismissing the complaint.

*C. T. Cotham*, for appellant.

*Murphy & Wood*, for appellee.

KIRBY, J., (after stating the facts). The rule of evidence is different, requiring more proof than the

establishment of the contention by a preponderance of the testimony in order to justify the reformation of a deed or written instrument on the ground of mistake. In *Eureka Stone Co.* v. *Roach,* 120 Ark. 326, 179 S. W. 499, the court said: "It is the settled rule of this court that, to justify or authorize the reformation of a written instrument on the ground of fraud or mistake, the evidence of such fraud or mistake must be clear, unequivocal and decisive." See also *Cain* v. *Collier,* 135 Ark. 293, 205 S. W. 651; *Welch* v. *Welch,* 132 Ark. 227, 200 S. W. 139; *McGuigan* v. *Gaines,* 71 Ark. 614, 77 S. W. 52; *Johnson* v. *Stuart,* 97 Ark. 635, 135 S. W. 354; *Waddell* v. *Bowdre,* 151 Ark. 474, 236 S. W. 599; *Norsworthy* v. *Hicks,* 170 Ark. 877, 281 S. W. 660.

The undisputed testimony shows that a settlement between the parties was agreed upon for the division of the lots and the conveyance made in completion of it, and the argument that appellant owed no duty to his mother to make such settlement is of no moment. The recitals of the deeds do not purport to show the terms of such settlement, however, nor any intention that the land to be retained by appellant should include that upon which the storehouse was situated.

Several witnesses testified that it was understood that appellant should keep the land upon which the storehouse was situated, and it was the intention to effect this by the description in the conveyance.

The other testimony tended to show, however, that the description was made in accordance with the agreement of settlement, and that appellant and one of the arbiters had gone out and stepped or measured the lots off before the deeds were written and had given the description as written to the draftsmen, thinking at the time that the land retained included the storehouse.

If he made a mistake in his estimate or measurement, not knowing the boundaries of his lots and the streets as laid out, his inclosure not conforming thereto, and the description was written in accordance with his direction,

.it cannot be said such mistake was mutual or warranted a reformation of the deed.

The evidence of any such mistake as would entitle the plaintiff to the relief sought is not clear, decisive and unequivocal, as the law requires.

We find no error in the record, and the judgment is affirmed.