NICHOLSON *v.* HAYES.

Opinion delivered November 3, 1924.

1. REFORMATION OF INSTRUMENTS—MISTAKE AND FRAUD.—To justify reformation of a written lease, there must have been a mutual mistake, or a mistake by one party coupled with fraud of the other.

2. REFORMATION OF INSTRUMENTS—SUFFICIENCY OF EVIDENCE.— Parol evidence to support a decree reforming a written instrument must be clear, unequivocal and decisive.

3. REFORMATION OF INSTRUMENTS—SUFFICIENCY OF EVIDENCE.—In an action by lessees for breach of the contract of lease, in which

the defendants asked for reformation of the lease sued on upon the ground of mistake and fraud, evidence *held* to warrant a decree for reformation.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; affirmed.

*Rogers, Barber & Henry,* for appellants.

Where the means of information are open to both parties alike, a court of equity will not undertake to relieve a party from the circumstances of his own inattention and carelessness. 89 Ark. 315; 45 L. R. A. 392; 18 C. J. 229; 47 Ark. 335; 14 Ency. of Evidence, 78. Parol evidence should not be admitted to vary the terms of a written contract. 89 Ark. 315; 25 A. L. R. 787. To justify or authorize the reformation of a written instrument the proof must be clear, unequivocal and decisive. 84 Ark. 349.

*Pat McNalley,* for appellee.

The findings of a chancellor will not be set aside unless clearly contrary to the weight of the evidence. 129 Ark. 197; 129 Ark. 120; 129 Ark. 583; 136 Ark. 624. Where fraud is alleged in a contract, parol evidence may be admitted to reflect the true agreements of the parties. 43 Ark. 439; 38 Ark. 334; 26 Ark. 41; 32 Ark. 454; 139 Ark. 447; 99 Ark. 45. Inadequacy of consideration may be a circumstance tending to establish fraud and will afford grounds for setting aside the contract. 78 Ark. 47; 77 Ark. 261. In equity, fraud may be inferred from facts and circumstances. 119 Ark. 578; 92 Ark. 509; 33 Ark. 425. Where the relation of confidence and trust exists, facts merely sufficient to cause an ordinarily prudent person to inquire are no defense. 86 Ark. 600; 43 Ark. 454.

HART, J. James Nicholson and S. J. Tanner instituted this action in the circuit court against O. C. Hayes and Ida Bell to recover damages for the breach of a lease contract of two town lots for the term of five years.

The defendants denied any breach of the contract on their part, and set up facts entitling them to a refor-

mation of the contract. On their motion the case was transferred to the chancery court and tried there.

The record shows that, on the first day of January, 1923, O. C. Hayes and Mrs. Ida Bell leased to James Nicholson and S. J. Tanner lots one and two, in block three, in the town of Norphlet, in Union County, Arkansas, for the period of five years, for the consideration of $50 per month. The lease was signed by the grantors and duly acknowledged by them on the same day. On the 8th day of March, 1923, the lease was duly filed for record.

It was the contention of O. C. Hayes and Mrs. Ida Bell that they leased to Nicholson and Tanner only 30 feet on the back end of the lots in question; that, by mistake on their part and fraud on the part of the lessees, the whole of said lots was described in the lease. They introduced testimony to support their claim, which will be stated in the opinion.

On the other hand, the evidence for Nicholson and Tanner tends to show that the description in the lease was correct.

The chancellor found the issues in favor of the defendants, and it was decreed that the complaint of the plaintiffs should be dismissed for want of equity, and that the defendants should have a reformation of the lease so as to recover only 30 feet off of and across the west end of the lots in question, and that said lease should be canceled as to the remaining portion of said lots. The case is here on appeal.

The rule in this State is that, to justify a reformation of a written instrument, there must have been a mutual mistake, or a mistake on the part of one party coupled with fraud on the part of the other, and that, if parol evidence is relied upon to establish the ground of reformation, it must be clear, unequivocal and decisive. *Welch* v. *Welch,* 132 Ark. 227, and *Cain* v. *Collier,* 135 Ark. 293.

The lease in question was signed by O. C. Hayes and Mrs. Ida Bell on the first day of January, 1923, and was duly acknowledged by them on the same day.

According to the testimony of James Nicholson and S. J. Tanner, the lease correctly expressed the agreement of the parties. They expressly denied having leased only a portion of the lots, and denied having told any one that they had done so. They exhibited several receipts for the rent, and these receipts recited that it was the monthly rental for lots one and two, in block three, in the town of Norphlet. They demanded possession of all of said lots, and, upon the refusal of the defendants to give them possession, they brought suit to recover the amount of rent which they had already paid and for damages for a breach of the lease contract by the lessors.

O. C. Hayes was the principal witness for the defendants. According to his testimony, he only agreed to rent to the plaintiffs 30 feet off of the west end of the lots in question. The front or east end of the lots was already occupied by tenants of the lessors. The lot of Hayes had a frame building on the front part of it, in which Charley Morrison conducted a grocery store and dry goods and gents' furnishing business. Morrison had been conducting the business in this store for several years, and occupied it at the time the lease in question was executed. He paid rent in the sum of $75 per month. On another part of the same lot was a little restaurant, and Hayes was receiving $35 per month for it at the time the lease in question was executed.

Mrs. Bell had two business houses on the front end of her lot. She received $75 per month for the larger house and $12.50 for the smaller. Both of these houses were occupied by their respective tenants at the time the lease contract was made. There was no building on the part of the lots rented to the plaintiffs. The plaintiffs told Hayes that they contemplated building on the back end of the two lots. There was an oil boom in the town of Norphlet at the time. It was agreed that there should be an alley left between the buildings which the plaintiffs contemplated erecting and those already erected on the front part of the lots. This alley was to be left so

that occupants of the buildings might have a place to unload wagons hauling goods to their stores, or business houses.

The lease was written by the plaintiff, James Nicholson, and Hayes did not read it over, because Nicholson told him that it only covered 30 feet off of the end of the lots which was vacant, and Hayes relied on this statement, because he had been a party to lease contracts with Nicholson before, and Nicholson had written them according to agreement.

Mrs. Ida Bell was also a witness for the defendants. According to her testimony, the contract was made by Hayes, and she did not read it over because she was told that it only covered 30 feet on the west end of the lots, and that it did not include the buildings on the front end. She had confidence in the statement to her in this respect, and, on that account, did not read the lease. Her daughter was present when she executed the lease, and corroborated her testimony in every respect.

The justice of the peace who took the acknowledgments of O. C. Hayes and Mrs. Ida Bell to the lease testified that the plaintiffs distinctly stated that the lease only covered 30 feet off of the west end of the lots, and that the plaintiffs, relying on this statement, did not read the lease.

According to the testimony of Charley Morrison, he conducted a grocery, dry goods and men's furnishing business in a frame building on the east end of the lot in question owned by O. C. Hayes, and that he had possession of such building at the time the lease in question was executed. He paid $75 per month rent. James Nicholson told him at one time that he had leased the back part of the lots belonging to O. C. Hayes and Mrs. Ida Bell, and that he contemplated building on the leased ground.

Tom Foster, who also was a tenant on the front end of said lots, stated that he paid $35 per month for the building occupied by him, and that James Nicholson had

told him that he had leased 30 feet back of the stores on the two lots in question.

This testimony makes a clear and convincing case in favor of · Hayes and Mrs. Bell. It is true that the testimony of these parties is contradicted by that of Nicholson and Tanner; but their testimony · is corroborated, not only by four other witnesses, but by the attendant circumstances. The undisputed testimony shows that the front end of the lots was occupied by buildings which were rented in the aggregate for $192 per month. These stores were occupied by their respective tenants at the time the lease was executed. The lessees paid the rent for three months without attempting to oust these tenants, or to in any manner question their right to occupy the buildings as tenants of the lessors. The rent paid by them amounted to nearly four times as much as the rent specified in the lease. These are very strong circumstances tending to show that there was no intention on the part of the lessors to lease the whole of the lots in question.

The justice of the peace who took the acknowledgments corroborated in every respect the testimony of Hayes and Mrs. Bell, to the effect that they only leased to the plaintiffs 30 feet on the west end of the lots, and that it was expressly understood between the parties that there should be an alley left between this 30 feet and the buildings on the front end of the lots, so that the tenants might have a place to unload merchandise for their respective business houses.

A daughter of Mrs. Bell also testified that she was present when her mother signed the lease, and that Nicholson expressly stated that it only covered 30 feet of the vacant end of the lots, and for this reason her mother signed the lease without reading it. Two tenants of Hayes and Mrs. Bell testified that Nicholson told them, after the lease was executed, that it only covered 30 feet on the vacant end of the lots.

It follows that the decree will be affirmed.