BARTON-MANSFIELD COMPANY *v.* WELLS.

Opinion delivered February 16, 1931.

*Caraway, Baker & Gautney,* for appellant.

*L. B. Poindexter,* for appellee Wells, and *J. R. Crocker* and *G. M. Gibson,* for other appellees.

SMITH, J.   Ponder Hillhouse, a building contractor, entered into an oral contract with F. S. Wells to build for the latter a bungalow for the agreed sum of $4,300. The contract contemplated a "turn-key" job.   Hillhouse was to furnish all labor and material, but it was known that his means were insufficient to comply with his contract unless advances were made to him as the work progressed.   Hillhouse commenced work, and Wells made advances amounting to $2,850, when he found himself unable to make further advances or to obtain the necessary credit to make the advances.   There then existed two mortgages on the land upon which the house was being constructed, one to the Federal Land Bank of St. Louis for $4,000, and another, a second mortgage, to the People's Bank of Imboden for a smaller amount.

It was estimated that $1,510 would be required to complete the building, and Hillhouse, with the consent of Wells, made application to the Imboden Bank for an additional loan of that amount, the proceeds of the loan to be paid out as the work progressed.   The bank agreed to make the loan, and made it with the understanding that Hillhouse should complete the building, and, when he had done so, should file a mechanic's lien against the building and would assign the lien to the bank for its protection.   As an inducement to the bank to make the loan, the representation was made that Hillhouse had taken out, or would take out, builder's insurance.   Wells had previously taken out insurance on the building, but there

was such delay in its construction that this policy had expired before the building was completed.

Pursuant to this agreement, Hillhouse made application to the local agent of a fire insurance company for a $4,000 policy, which was later issued to him. This policy recites that the insurer ''does insure F. S. Wells for the term of sixty days'' against loss by fire, and in the loss payable clause this provision was written: ''Any loss under this policy that may be proved due the assured shall be payable to the assured and Ponder Hillhouse, Smithville, Arkansas, subject nevertheless to all the terms and conditions of this policy.'' It was testified, both by Wells and the officers of the bank, that Hillhouse agreed that the bank would be protected by a policy of insurance, and that the loan would not have been made but for this agreement.

After negotiating this loan, Hillhouse resumed work on the building, but did not complete it, although the bank advanced him the full amount of the loan, less $230.52. On December 30, 1928, while the contract of fire insurance was in force, the building burned before it had been completed. The contention is made that Hillhouse had then been paid the amount that would have been due him had the building been completed, but, whether this is true or not, it is very clearly shown that the payments which had been made to Hillhouse exceeded the proportionate part of the building cost up to the date of the fire; in other words, Hillhouse had been paid more than the value of the work done and material furnished according to the building contract.

After the fire Hillhouse refused to permit Wells to examine the insurance policy, nor would the local agent furnish that information, but it is not contended that any change had been made in the policy as issued.

Negotiations were entered into between the bank and Wells, on the one hand, and Hillhouse, on the other, to settle the controversy which arose out of the facts stated, and the proposition was made to Wells that he rebuild the house out of the proceeds of the insurance policy.

The offer to permit this to be done was made at the trial, and is renewed in the brief.

Wells proposed that Hillhouse start from the ground, or at the bottom of the basement, and rebuild everything new, but Hillhouse refused to do this, insisting that he could use the foundation and certain walls by patching them, and when Wells declined to agree to this the proposition was dropped and does not appear to have ever been renewed, and the officer of the bank having the matter in charge for the bank testified that Hillhouse stated that he could not rebuild, and that he wanted Wells to collect the insurance.

It does not appear that Hillhouse made any effort to collect the insurance, and the adjustment of the loss was made by Wells, although Hillhouse kept the policy of insurance in his possession until February 23, 1929, at which time he assigned his interest therein to Barton-Mansfield Company, which company furnished him about $800 worth of material, for which he had not paid. It was thereafter impossible for Hillhouse to rebuild, as he was clearly insolvent.

Hillhouse was killed in an automobile accident on July 4, 1929, and W. B. Rudy qualified as administrator of his estate, and on October 19, 1929, Wells brought this suit to collect the insurance policy. This suit was brought against the insurance company, the Federal Land Bank, the People's Bank of Imboden, the administrator of Hillhouse, and the Barton-Mansfield Company, it being alleged that all these parties claimed some interest in the insurance, and it was prayed that the rights of all parties therein be decreed.

The insurance company filed an answer admitting its liability on the policy, and, upon paying the amount thereof into court, it was discharged. Numerous pleadings were filed by the various parties, which we find it unnecessary to review. A large amount of testimony was taken, and upon the final submission of the cause the court held that Hillhouse had no interest in the proceeds of the policy, and that the interventions of the Bar-

ton-Mansfield Company and of the administrator should be dismissed as being without equity, and this appeal is from that decree.

Upon the final submission of the cause, it was prayed by the Barton-Mansfield Company that the policy be reformed to conform to the intent of the parties, and made to show that its intent was to protect the interests of the deceased contractor Hillhouse, inasmuch as his liability for the failure to erect the building as required by his contract had not been discharged by his death, and the premium upon the policy had been paid by Hillhouse.

The court denied this relief, and we think properly so. If there was a mistake in the issuance of the policy, it was not mutual. The agent for the insurance company testified that the policy issued conformed to the application for it. Wells, and not Hillhouse, was named as the assured, and we think the fair and correct interpretation of the loss payable clause, which is copied above, was to make the loss payable to Wells and to Hillhouse as his interest might appear at the time of the fire. We are also of the opinion that Hillhouse had no interest in the building at the time of the loss by fire. It is true his obligation to erect the dwelling, for which he had been paid, had not been legally discharged, but as appears from what has been said, this obligation had been repudiated. Hillhouse died on the 4th of July after the occurrence of the fire on December 30, 1928, without evidencing any intent to rebuild, but, on the contrary, the testimony shows that he had no such intention. Hillhouse was admittedly insolvent, and his estate was of a value so small that the probate court made an order vesting the whole thereof in the widow under the statute, and no complaint is made of that action. Before the final submission of the cause the widow of Hillhouse was made a party, but no pleadings were filed on her behalf.

The undisputed fact that Hillhouse paid the premium on the insurance policy is of no controlling importance, for the reason that the testimony clearly shows that his agreement to take the insurance was a part of the con-

sideration which induced the Imboden bank to make the loan to him, and the decree of the court refusing to reform the policy must be affirmed, for the reason that relief of this character is granted only in cases of mutual mistake or the mistake of one party, coupled with the fraud of the other, the proof thereof being clear, unequivocal and decisive, and we are of the opinion that the testimony is not of that character. *Nicholson* v. *Hayes,* 166 Ark. 112, 265 S. W. 640; *Fagan* v. *Graves,* 173 Ark. 842, 293 S. W. 712; *American Alliance Ins. Co.* v. *Paul,* 173 Ark. 960, 294 S. W. 58; *Loden* v. *Paris Auto Co.,* 174 Ark. 720, 296 S. W. 78. It may also be said that it would be inequitable to grant the relief prayed.

The testimony shows that Hillhouse has been paid for all the work he did and for all the material furnished, and he is now dead and cannot rebuild the house, and would not have done so had he lived, and as his estate is insolvent and has been vested in his widow, no liability for the breach of the contract can be enforced. He has been paid once, and it would be inequitable to again pay his estate, or his creditor, the Barton-Mansfield Company.

It is true the Barton-Mansfield Company has not been paid for its material, but that company acquired, by the assignment of the policy to it by Hillhouse, no greater interest therein than Hillhouse himself had. Hillhouse was paid money which he might and should have used in paying his bill to the Barton-Mansfield Company, but he did not do so, and the building was destroyed by fire before any claim for a lien had been filed.

Before the opportunity had been afforded Wells to inspect the policy, he assigned his interest therein to the People's Bank of Imboden, and that bank contracted with the Federal Land Bank that the proceeds of the policy should be paid the Federal Land Bank, and its first lien on the land should be reduced to that extent.

The decree of the chancery court conformed to this agreement, and, as it appears to be in accordance with the equities of the case, it is affirmed.