SCHWARZLOSE *v.* KINGREY.

5-1991                                    330 S. W. 2d 947

Opinion delivered January 18, 1960.

*Moses, McClellan, Arnold, Owen & McDermott,* by *Jack Young,* for appellant.

*McMillan & McMillan,* for appellee.

GEORGE ROSE SMITH, J. In 1957 the plaintiff-appellant, Monroe Schwarzlose, was an established processor of turkeys, operating a processing plant in Cleveland county. He was also a retail dealer in poultry feed, selling an assortment of feeds made by Quaker Oats Company. To supply his plant with turkeys Schwarzlose raised birds himself and also offered a plan by which farmers in the area might raise turkeys for him under a contractual arrangement. The plan contemplated that each grower would establish his credit with Quaker, purchase turkey poults from Schwarzlose in the spring, raise the turkeys with Quaker feed, and resell the mature birds to Schwarzlose in the fall. It was expected, of course, that the market price prevail-

ing in the fall would provide a profit for the grower, who contributed his labor and the use of his premises to the venture.

This case, which represents a consolidation of two suits in the trial court, involves two instances in which the plan resulted in a net loss, the market price being less than the grower's outlay for poults, feed, and medicine. By the terms of the written contract the greater part of this loss was to be borne by the grower, and Schwarzlose accordingly sued each of the growers, Kingrey and Wilkins, upon the notes and chattel mortgage each had given in buying poults, brooders, and equipment from Schwarzlose. The defendants filed similar answers and cross-complaints, asserting that the written contracts did not truly express the agreement between the parties and that the growers were entitled to recover all their actual costs plus an amount equal to forty cents for each bird raised to maturity.

After an extended trial the chancellor upheld the defendants' contentions and granted a reformation of the contracts and a money judgment against Schwarzlose for the amount found to be due each grower. It being conceded that the proof to support a decree of reformation must be clear, unequivocal, and decisive, Nicholson v. Hayes, 166 Ark. 112, 265 S. W. 640, the principal question is whether the evidence in this record measures up to that standard.

The testimony shows that in February and March of 1957 Schwarzlose took the initiative in seeking to persuade farmers to raise turkeys for him. He called upon the two appellees, Kingrey and Wilkins, a number of times before they accepted his proposal and orally agreed to grow birds for his plant. We shall detail the facts with respect to Kingrey only, the two cases being similar.

The original agreement between Schwarzlose and Kingrey was admittedly oral and was probably made late in March. Schwarzlose sold brooders, feeders, and other equipment to Kingrey, for which Kingrey signed

a promissory note for $1,948.54, dated April 1. In April Kingrey bought 10,120 poults from Schwarzlose, at 75¢ each, and gave a promissory note, dated April 3, for the total purchase price of $7,590.00. Kingrey began raising the turkeys and eventually purchased $37,297.70 worth of feed from Schwarzlose.

It was not until the night of June 21 that Schwarzlose took a mimeographed form of contract to Kingrey's home and obtained his signature. Schwarzlose admits that he told Kingrey that the written contract was the same as the oral agreement made in the preceding March. The Chancellor was justified in finding that Kingrey relied upon this statement and signed the contract without reading it carefully. If there was really a material variance between the oral and written contracts it is sufficiently clear that Kingrey signed the latter under a mistaken belief as to its contents and that Schwarzlose either shared the mistake or was guilty of misrepresentation.

Paragraph 7 of the written instrument provides that Schwarzlose will repurchase the turkeys in the fall at the greater of the following prices:

"A. The prevailing market price for such turkeys in the State of Arkansas . . . as shown in the Federal-State Market News Service distributed by the University of Arkansas.

"B. A price equal to the cost of growing such turkeys, as herein defined, plus a sum equal to $.40 per mature turkey repurchased, *provided that the price as determined under this subsection shall never exceed the price as determined under Paragraph 7A plus a sum equal to $.40 per mature turkey repurchased.*" (Our italics.)

The pivotal question is whether the oral agreement contained the proviso we have italicized, by which the grower's recovery of his actual costs could never exceed the market price plus forty cents a bird. Schwarzlose testified that this limitation was included in his original proposal, but we think that his version of the mat-

ter is clearly and convincingly rebutted by the appellees' proof.

Kingrey and Wilkins both testified that during the negotiations Schwarzlose guaranteed them their costs plus forty cents a turkey, regardless of the market price. This testimony is corroborated by four other farmers and a banker, to whom Schwarzlose made the same explanation of his offer. Ordinarily the negotiations between Schwarzlose and third persons would be inadmissible, on the principle of *res inter alios acta,* but here Schwarzlose himself testified that his proposal to the others was identical with that made to the defendants. This admission distinguishes the case from *Hight* v. *Marshall,* 124 Ark. 512, 187 S. W. 433, cited by the appellant, and opens the way for proof of the other negotiations.

The attorney who prepared the written contract testified, after Schwarzlose had waived the attorney-client privilege, that the first draft of the agreement did not contain the proviso we have emphasized. It is clearly inferable from this lawyer's testimony that the proviso was suggested to him by Schwarzlose after the parties had entered upon the undertaking in March or early April. Finally, we observe that in the witness chair Schwarzlose was unable to state the substance of the proviso, despite repeated questions during his cross-examination. We think it reasonable to conclude that he did not have the limitations of the proviso firmly in mind when he first sought to induce the appellees to raise turkeys for him.

The appellant contends alternatively that in any event the chancellor erred in cancelling the appellees' notes for the purchase price of the brooders and other equipment, since this capital investment was not part of their recoverable costs of raising the turkeys. Even so, the notes were properly canceled. The net balance in favor of the appellees, without taking the purchase of equipment into account, was more than the face amount of the equipment notes, and consequently the chancellor was right in crediting the appellant with the

amount of the cancelled notes and giving the appellees a judgment only for the balance then remaining due.

Affirmed.