**WEISS et al. v. TURNEY.**

No. 13853.

United States Court of Appeals
Eighth Circuit.

April 22, 1949.

Edwin E. Dunaway, of Little Rock, Ark., for appellants.

Jack Holt, of Little Rock, Ark. (Holt & Holt, of Little Rock, Ark., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellants for the reformation of a deed executed by them and delivered to the appellee Civil Turney. Appellants are husband and wife but the property involved was the property of Mr. Weiss, and Mrs. Weiss joined in the execution of the deed only to release her dower interests. The parties will be referred to as they were designated in the trial court. The ground upon which reformation was sought was mutual mistake.

At the times in controversy in this action Weiss was the owner of three lumber yards on one of which was located a planing mill and a stave mill. He also owned a large quantity of lumber and some 12,000 or 15,000 acres of timber land located in and around Heber Springs, Arkansas. In January, 1947, he contracted to sell to the defendant the planing mill and the yard on which it was located for $24,000, and as Turney was not able to pay the entire purchase price a deed and Turney's notes representing the balance of the purchase price were placed in escrow to be there held until the purchase price should be paid. While the deed and the notes were still in escrow a dispute arose between Weiss and Turney as to the payments which had been made by Turney. Turney contended that he had paid the full purchase price and that Weiss owed him about $31,000 for lumber delivered by Turney to Kenark Lumber Company, a corporation in which Weiss owned half the stock. Weiss, on the other hand, contended that Turney owed him about $17,000. Turney filed a suit for specific performance of his contract of purchase and while this suit was still pending and undetermined the parties met at the office of Weiss' attorney in an effort to settle their differences. After two or three days of futile negotiations between Turney on one side and Weiss and his attorney on the other, Turney employed an attorney who joined in the negotiations for some two or

three days until a compromise agreement was finally reached and the deed in controversy was executed in settlement of the matters in difference between the parties.

While the instrument is referred to as a warranty deed, it is in fact more than a deed of conveyance. It conveys six separately described properties, the first description being as follows:

"All of Block Twelve (12) in Depot Addition to the Incorporated Town of Heber Springs."

Paragraph 7 reads as follows:

"All improvements, machinery, equipment, appliances and appurtenances attached to the above described real property or used in connection therewith or belonging thereto, including but without limitation, the items set forth in the Schedule attached hereto."

The instrument contains covenants of warranty and a provision that the grantor, " * * * reserves the right to lease all of the property described in paragraphs 3, 4, 5, 6 and 7 above, and that part of the property described in paragraphs 1 and 2 above on which any lumber may now be stacked for a period of one (1) year commencing October 15, 1947, or commencing sooner if operations can be started prior to October 15, 1947, for a rental of Five Hundred Dollars ($500) per month, payable in advance, for each month the lease remains in effect. The lease may be terminated at the election of Michael M. Weiss upon giving fifteen days' notice to terminate to Civil Turney. The lease shall be assignable."

The instrument contains other covenants with reference to the payment of taxes and an agreement on behalf of Turney to keep the leased property insured, and an agreement on the part of Weiss to replace all parts of the mill machinery which may be broken and to return the planing mill at the end of the lease in as good condition as when leased, ordinary wear and tear excepted. It also contains a recital that the parties have entered into a lease agreement "and all terms of said agreement are incorporated in this reservation with the same force and effect as if set forth herein word for word."

There was located on the property described in the first paragraph of the deed a planing mill and a stave mill and it was the contention of the plaintiffs that there was no intention on their part to transfer title to the stave mill; that the defendant paid no consideration therefor and had no idea of acquiring the title thereto, and that the inclusion of language which would transfer the title to the stave mill resulted from a mistake. Defendant denied that there was any mutual mistake in the preparation of the deed and asserted that it truly represented the conditions of the settlement between the parties.

The court found the issues in favor of the defendant, found that plaintiffs and defendant knew at the time of the execution and delivery of the deed that the stave mill property was located upon Block 12, as described in paragraph 1 of the deed; that plaintiffs did not except said property from the deed, nor did they direct their counsel so to do. The court concluded as a matter of law that there was no mutual mistake of fact between the plaintiffs on the one hand and the defendant on the other. The court, among other conclusions of law, held that the plaintiffs intended to and did convey title to said stave mill property to the defendant by their said deed and that defendant in accepting delivery thereof understood that he was receiving conveyance of title to said stave mill property. The court thereupon entered judgment dismissing plaintiffs' complaint for want of equity.

In seeking reversal plaintiffs contend that (1) the record clearly and convincingly shows a mutual mistake, and (2) even if appellee's testimony is accepted in its entirety, reformation should still be decreed.

The court's findings of fact are presumptively correct and should not be set aside unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

There was no relation of trust between the parties but they dealt at arm's length. There was neither allegation nor proof of fraud, deceit, or overreaching. Plaintiffs, during the entire negotiations leading up to the execution of the deed, were represented by able counsel, whereas in many of the negotiations defendant was

without counsel. The deed as executed was drawn by counsel for Mr. Weiss. The right to reformation of an instrument is not an absolute one and courts of equity, in the exercise of their jurisdiction to reform written instruments, proceed with great caution. In Arkansas the reformation of an instrument for mutual mistake may not be granted on a probability or on a mere preponderance of the evidence but the evidence must be clear, convincing, unequivocal and decisive. Cherry v. Brizzolara, 89 Ark. 309, 116 S.W. 668, 21 L.R.A.,N.S., 508; Goerke v. Rodgers, 75 Ark. 72, 86 S.W. 837. This rule as to the degree or quality of proof required is not confined to the courts of Arkansas but is the prevailing rule in practically all jurisdictions. An instrument may not be reformed on contradictory and unsatisfactory evidence but when the mutual mistake is alleged it must be clearly established by convincing and satisfactory proof. Before an instrument can be reformed it must appear that it fails to express the agreement of the parties because of mutual mistake or mistake on one side and fraud and inequitable conduct on the other. Mistake of one of the parties without mistake or fraud of the other will not, of course, authorize reformation. To warrant reformation on the ground of mutual mistake it must appear that by reason of the mistake both have done what neither intended; in other words, the instrument must do violence to the understanding of both parties. Each must have labored under the same misconception in respect to the terms of the written instrument. Fagan v. Graves, 173 Ark. 842, 293 S.W. 712. In the instant case, Weiss testified that he did not intend to convey this stave mill as a part of the settlement with Turney. Turney, however, is equally positive that he was to receive all the property including the stave mill. He testified:

"They told me I was to write all of the indebtedness off they owed, and in turn I was to get all the property in Heber Springs."

He was then interrogated as follows:

"Q. During the course of all these negotiations, Mr. Turney, did you know that there was a stave mill up there? A. I certainly did.

"Q. Did you know that there was a planing mill up there? A. I sure did.

*    *    *    *    *    *

"Q. Was anything said throughout the course of any of your negotiations or at the time Mr. House and Mr. Reid called you and Mr. Weiss back into the office after they had conferred with each other, to the effect that the stave mill was not to be conveyed to you? A. Not one word was said.

"Q. Was anything said which required the inclusion in the deed of a list of any of the machinery or equipment? A. No, sir, not at that time.

"Q. Now, you say that these attorneys informed you that you were to release all of your claims against Mr. Weiss? A. That's right, and drew up a piece of paper and had me to sign it, that I was releasing it all.

"Q. Were you to assign your account against the Kenark Lumber Company? A. That's right.

"Q. Was Mr. Weiss a stockholder at that time in the Kenark? A. Yes, sir, fifty percent.

"Q. Were Mr. Weiss and his wife then to convey these pieces of property to you? A. That's right.

"Q. And did the attorneys tell you that Mr. and Mrs. Weiss would convey to you all the property they owned in Heber Springs? A. Yes, sir; in the town of Heber Springs.

"Q. What did you understand by that, please? A. I understood that it was the real estate with the equipment attached thereto.

"Q. They did not say anything about holding any of the equipment out? A. No, sir.

*    *    *    *    *    *

"Q. Did you understand that this deed reflected the true settlement between you and Mr. Weiss? A. I did."

This and other testimony of the defendant to like effect was corroborated by the testimony of his attorney. At the close of the argument of the case the court in an-

nouncing its decision, among other things said:

"I think this: that these two parties were there making the best trade they could, and I don't believe Mr. Weiss had any mental reservation there at that time that he was going to hold out this stave mill. The testimony of Mr. Reid (attorney) is that he thought it was taking everything that this man owned up there; the testimony of the attorney himself is that he thought it was taking everything he owned up there. My conception of a mutual mistake of that kind is that both parties intend something else, something other than what they did. * * * To my mind the proof of a mutual mistake is not clear and convincing; * * * it is not clear to my mind that Mr. Weiss intended to hold this out. * * *"

We think the record is devoid of any substantial evidence of a mutual mistake. The judgment appealed from is therefore affirmed.