AERMOTIVE EQUIPMENT CORP. v. UNITED STATES.

No. 5435.

District Court of the United States W. D. Missouri, W. D.

Sept. 28, 1951.

Leo Fixler, New York City, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., for plaintiff.

Sam W. Wear, U. S. Atty., David A. Thompson and Sam O. Hargus, Asst. U. S. Attys., all of Kansas City, Mo., for defendant.

REEVES, Chief Judge.

The plaintiff either is successor to or a continuing entity of a Missouri corporation known as Air Communications, Inc. The latter named corporation on August 8, 1944 contracted with the government for the supply of certain remote control radio equipment known as "R. C. 261." Such contract called for a "sensitive relay, double pole, double throw, type BX–14, as made by Allied Control Co., Inc., New York, New York, or equal."

. Pursuant to this contract the predecessor in name of the plaintiff purchased from Allied Control Co., Inc. of New York a large quantity of the type BX–14 relays mentioned in the contract. In November 1944 the defendant approved certain minor modifications and later delivery was made of 1832 of the above described units, the same having been inspected by the government. However, in January of 1945 the defendant rejected said completed RC–261 unit on the ground that it failed to meet a specified "drop test" and asserted that such failure was attributable to the BX–14 Allied relay.

Following such complaint the government rejected the entire 1832 Allied relays then on hand as not meeting government relay specifications in failing to meet the drop test, in having one retaining bracket instead of two as allegedly required, and in otherwise being defective.

The plaintiff or its predecessor in name, according to the complaint, returned said relays to Allied and thereafter, submitted a new type of relay for approval which differed mainly from the rejected relay in that it contained two support brackets instead of one, and this relay was approved by defendant.

It is contended by the plaintiff that the rejection of said gadgets or relays was by mutual mistake and that thereafter when the contract was terminated the parties by mutual mistake failed to take into account the liability of the government for such allegedly wrongfully rejected gadgets or relays and the plaintiff by its present name seeks to modify the original agreement as well as the termination settlement so as to show liability upon the government in the sum of $8101.60 for such rejected gadgets or relays.

The government resists the action upon the ground that the original relays did not

comply with specifications and moreover that the termination settlement agreement amounted to an adjustment of all claims asserted by the plaintiff or which might have been asserted against the defendant.

 While the testimony tended to show that relays similar to those rejected by the government had been approved for other uses by the government, it was not shown that the government was in error in rejecting 1832 relays purchased by the plaintiff from Allied Control Co., Inc. of New York as contended by the plaintiff. After the rejection of said relays or equipment it appears that the plaintiff obtained satisfactory equipment elsewhere than from the Allied Control Co., Inc. of New York, and that the latter company had interposed a claim against plaintiff for said 1832 relays and that in turn the plaintiff sought to charge the government with the amount of said claim. The matter was discussed with representative of the government but rejected by said representative according to the evidence of such representative.

After such rejection an appeal was taken to proper authorities of the government wherein the identical question was presented as here. Upon such appeal the plaintiff was cast and, as it had a right to do, it brought this independent suit here.

1. When the War Department acting for the government rejected the first shipment of gadgets or relays as not conformable to contract specifications the plaintiff accepted such rejection as proper and undertook to supply relays conformable to the contract. It did this, as it alleged, in its complaint, because "lacking independent knowledge of government relay specifications and relying solely upon the aforesaid action of defendant, 'Air' returned said relays to Allied and thereafter submitted a new type of relay for approval which differed mainly from the rejected relay in that it contained two support brackets instead of one, and this relay was approved by defendant."

 The government, of course, was familiar with the contract and it does not appear that there was any mutual mistake there or that there should have been for the reason that the contract specifications were available to both parties. The complaint of the plaintiff arose from the fact that Allied Control Co., Inc. of New York had placed a claim against it for the rejected relays and it undertook to pass on to the defendant the amount of the claim interposed by Allied Control Co., Inc. of New York. The claim, in effect, was rejected in the termination settlement agreement and the plaintiff understood that.

2. In order to warrant a modification of contractual arrangements on the grounds of mutual mistake, it must be made to appear from clear and incontrovertible testimony that both parties understood the contract as it should have been and that they were both mutually mistaken as to the contract as it actually was. The evidence does not meet these standards in this case. Weiss v. Turney, 8 Cir., 173 F.2d 617, loc. cit. 619; Power Service Corporation v. Joslin, 9 Cir., 175 F.2d 698, loc. cit. 704; 5 Williston on Contracts, Section 1548.

In view of the above the plaintiff is not entitled to recover and judgment should be and will be entered for the defendant.