Virgil **WHEELER**, Petitioner,

v.

**AMERICAN PUBLIC LIFE INSURANCE COMPANY**, Respondent.

**No. H 70-C-21.**

United States District Court,
E. D. Arkansas, E. D.

July 3, 1972.

Robert J. Donovan, Marianna, Ark., for petitioner.

Ronald A. May, Wright, Lindsey & Jennings, Little Rock, Ark., for respondent.

MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

This diversity action was originally filed in the Chancery Court of Lee County, Arkansas. Since the petitioner Virgil Wheeler was at the time of the filing of the petition and is now a citizen of Lee County, Arkansas, and the respondent was and is a corporation organized and existing under the laws of the State of Mississippi, with its principal place of business in Jackson, Mississippi, and the cause of action being of a civil nature involving more than $10,000, exclusive of interest and costs, it was properly removed to this Court pursuant to 28 U.S.C.A. § 1332.

The petitioner, Virgil Wheeler, seeks declaratory judgment as to the meaning and interpretation of an insurance contract with the respondent, American Public Life Insurance Company.

The insurance policy in question was issued to the petitioner, Virgil Wheeler, December 4, 1958, by the Washington Standard Life Insurance Company, as Policy No. 2679. The policy of Washington Standard is a life insurance policy on the life of Virgil Wheeler with the face amount of $7,500. The beneficiary is Marine Vandran Wheeler, Wife, with contingent beneficiary: Any child or children born of this marriage share and share alike.

Paragraph (B) under Death Benefits of the policy provides that on each policy anniversary date following the death of the insured until and including the 14th policy anniversary date, there will be an annual payment of $100.

Paragraph (C) under Death Benefits provides on the fifteenth anniversary of the date following the date of the death of the insured there will be a payment of $1,700.

The policy provides Endowment Benefits, inter alia, A. Maturity Endowment: On December 4, 1973, the maturity date of the policy, a single payment of $1,700. The policy further provides for Maturity Options and Disability Benefit.

There is inserted in the policy a certificate for purposes of illustration and explanation of Dollar A Day Investment Plan. In addition, there is included an additional provision as a part of the policy designated LOAN PROVISION, Insert—JEB–1. Included with this insert in JEB–1 is "Guaranteed Options of Settlement on Maturity Date for each $1,000 of Original Amount Insured". This special provision provides if 'the insured is living on the maturity date and if all premiums have been paid and there is no indebtedness to the Company hereon, the insured, upon surrender of this policy may, in lieu of receiving the ultimate amount as provided on the first page hereof, select one of the following options:

Option 1.  * * *
Option 2.  * * *
Option 3.  Receive in cash the Ultimate Amount of  . . . $5,000.00 or
Option 4.  * * *

The petitioner contends that he purchased the policy originally from Washington Standard Life Insurance Company as an investment pursuant to the above stated option as explained to him and his wife by the agent of the company who took the application and delivered the policy.

Subsequent to issuing the policy by Washington Standard Life Insurance Company, the Washington Independent Life Insurance Company became successor to Washington Standard Life Insurance Company and assumed control, responsibility and obligations, including the policy in question issued to the petitioner.

The original policy issued by the Washington Standard Life Insurance Company was destroyed by fire in 1962 when the petitioner's home was destroyed. The successor company, Washington Independent Life Insurance Company, issued a duplicate policy to the petitioner identical to the original policy. The duplicate policy was introduced and

received in the record. There is no dispute as to the duplicate being identical to the original Policy No. 2679. The maturity date as provided by the policy is December 4, 1973. It provides for a quarterly premium of $96.73. Premiums have been paid on the policy as they became due and there is no indebtedness to the company. The insured, petitioner herein, contemplates if living on the date of maturity December 4, 1973, to claim Option 3 as settlement on maturity date and receive in cash the sum of $37,500 for the fifteen years' investment. This was the petitioner's original intention when he purchased the policy after it was represented by the agent of the company as being one of few such investment policies being sold by the company.

The respondent, American Public Life Insurance Company, assumed all obligations of the original company, Washington Standard Life Insurance Company, Little Rock, Arkansas, and Washington Independent Life Insurance Company, successor company, under policy of insurance No. 10937 effective January 2, 1965. It is admitted that the Washington Standard Life Insurance Company issued the policy and that the respondent assumed all obligations under such policy by insurance agreement effective January 2, 1965, as provided in Assumption Certificate included in the record.

Respondent denies that the policy when issued contained the special insertion providing for the option which the petitioner claims, and contends that the physical insertion of such special provision into the insurance policy or duplicate was in error, unauthorized by the respondent and had no legal effect on the rights of the parties.

Respondent admits that the petitioner has complied with all provisions and conditions of the policy pursuant to its terms and that the petitioner requested that the company advise of the policy value at its maturity. Respondent further admits that it has advised petitioner that the guaranteed cash value of the policy on maturity, that is on the 15th anniversary, is $1,700 and denies further

liability pursuant to the provisions of the special insert which is at issue in this proceeding.

It is also admitted that the policy in question is presently in full force and effect and that it contains an incontestability clause. Further, it is admitted that Viola Roberson was the agent for the Washington Standard Life Insurance Company which accepted application for the policy and delivered the policy to the petitioner.

The case was regularly scheduled and tried to the court on Thursday, March 9, 1972. Following the opening statements of counsel, the testimony of witnesses was presented, together with exhibits. The deposition of Mrs. Viola Roberson was included as a part of the record. It was stipulated by counsel that Paul Chambers whose signature is included with the secretary and registrar on the policy was President of Washington Standard Life Insurance Company and its successor Washington Independent Life Insurance Company. Following the hearing, the Court took the matter under advisement and permitted briefs to be filed, which have been received.

The Court will first consider the contention of the petitioner that the respondent's proffered defense of error and mistake is barred by the incontestability clause admitted by the respondent as a part of the policy and provides as follows:

This policy shall be incontestable after it has been in force during the lifetime of the Insured for a period of two years from its Policy Date, except for non-payment of premiums; provided, however, the provisions, if any, for disability, accidental death or premium payor benefits contained in any rider or agreement attached hereto and made a part of this policy shall become void or cease to be in force, or the benefits restricted or limited as the case may be, for the causes and under the conditions and limitations as stated in the riders or agreements for such benefits.

Although the respondent claims the insertion of the special provision at issue in this proceeding was an error and mistake and insists that the policy in question should be reformed to specify the intent of the parties, it was not pleaded as a defense or request for affirmative relief. The respondent insists that although it was not specially pleaded that it was entitled to such defense and reformation of the policy.

If under the facts as established by the record, the special inserted provision of the policy, Insert—JEB–1, providing the options relied upon by the petitioner was in fact an error and its insertion as established by the record is a mistake, it would follow as a matter of law the respondent insurance company would not be liable in the amount claimed by the petitioner. Without reaching the question of reformation, the result would amount to the same should it be established that the special inserted provision was in fact in error or a mistake when the policy was issued.

The respondent insurance company contends that the incontestability clause has no bearing on the case. Reformation was not specifically pleaded because the respondent's position was that the policy originally issued and on which the petitioner's rights must stand did not have the disputed language. This was the basis which gave rise to this action for a declaratory judgment.

The Court cannot agree with the contention of the respondent that the incontestability clause is not relevant and has no bearing on the case. The question of the incontestability clause applicable to life insurance policies has been considered and construed by the courts over a period of years.

■ That a policy is incontestable means that its validity may not be questioned usually after a certain period of time as fixed by statute or by a provision in the policy of insurance itself. Incontestability has nothing whatsoever to do with the agreement between the parties to the insurance contract. Although courts have differed on the construction

and application they are unanimous in the above rule as a matter of law.

Numerous states have provided by statute that life insurance policies contain such a clause. At the time the policy in question in the instant case was issued Arkansas did not have a statute requiring the incontestability clause. Such a provision was included in the statute by the Arkansas Legislature in 1959. (Ark.Stat. 1947 Anno. § 66–3304)

■ Also, the courts appear to be unanimous that the law of the state applicable to the issue is to be applied. Therefore, the Court concludes that the Arkansas law is applicable to the question of incontestability.

The law appears to be well established in Arkansas as stated in Fore v. New York Life Ins. Co., 180 Ark. 536, 538, 22 S.W.2d 401, 402, as follows:

"The modern rule is that a life insurance policy containing a provision that it shall be incontestable after a specified time cannot be contested by the insurer on any ground not excepted in that provision. It is said that the practical and intended effect of such a stipulation is to create a short statute of limitations. By the stipulation, the insurance company agreed that it would take a year to investigate and determine whether it would contest the policies of insurance, and that, if it failed within that time to discover any grounds for contesting the same, it would make no further investigation and would not thereafter contest the validity of the policies." Cf. Missouri State Life Ins. Co. v. Cranford, 161 Ark. 602, 257 S.W. 66; Standard Life Ins. Co. v. Robbs, 177 Ark. 275, 6 S.W.2d 520.

This question was considered in Richardson v. Travelers Ins. Co., 171 F.2d 699 (9 Cir. 1948). There, as in the instant case, it was alleged that a mistake had been made in the issuing of the policy. There the Court construed numerous decisions as to the application of the term and its effect. The question of mistake and reformation was considered.

The court stated, commencing at page 700, as follows:

"The wording of the incontestable clause is unambiguous. It states, 'this contract shall be incontestable * *.' It seems that the phrase 'this contract' patently applies to the printed provisions appearing on the document of insurance of which that clause is a part. It is not a reference to the oral conversations and negotiations preliminary to the execution of the written instrument, but rather to the formal writing itself. The clause does not say that the insurer shall not contest his liability under the actual agreement; it says *this contract* shall be incontestable. The provisions setting forth *optional payments* upon maturity of the policy are integral parts of the written contract, and are included in the reference, 'this contract shall be incontestable * * *.' It seems logical to assume that an action to reform portions of a document involves contesting their validity." [Emphasis supplied.]

The court went on to say at page 701, as follows:

"We believe this conclusion is supported by a consideration of the purposes for which incontestable clauses have been inserted in life insurance policies. It is generally agreed that the origin of the clause may be found in the competitive idea of offering to policyholders assurance that their dependents would be the recipients of a protective fund rather than a lawsuit. Citing cases." See Newton v. New York Life Ins. Co., 325 F.2d 498 (9 Cir. 1963).

The Court adopts the rule in Richardson v. Travelers Ins. Co., supra, as the law on the question of interpreting the effect of the incontestability clause adopted by the Supreme Court of Arkansas in the above cited Arkansas cases. The Court, therefore, concludes that the incontestability clause inserted in the policy, which gives rise to this action, is valid and operates to preclude an attack upon the terms of the policy issued by the Washington Standard Life Insurance Company December 4, 1958, to the petitioner, Virgil Wheeler.

However, assuming, but not deciding that the respondent is entitled to the defenses it claims, namely, an error or mistake to which the incontestability clause is not applicable. The contention fails as it is not supported by the facts established in the record by the testimony, exhibits and stipulation of the parties.

It is established by the testimony that the policy in question when issued to Virgil Wheeler by Washington Standard Life Insurance Company December 4, 1958, that it contained the Insert—JEB–1 which included guaranteed options of settlement on maturity date for each $1,000 of original amount insured. It is already established that the face amount of the policy was $7,500.

It is also established by a preponderance of the testimony that Viola Roberson was the agent of the Washington Standard Life Insurance Company who took the application of Virgil Wheeler on which the insurance policy was issued, representing to the Wheelers that the policy would have a value of $37,500 upon maturity. Mr. Wheeler testified that this representation was made to him and Mrs. Wheeler by the company's agent, Viola Roberson, which caused him to purchase the life insurance policy. He testified he did not need the life insurance and on the representation of Mrs. Roberson he purchased the policy as an investment. This testimony is undisputed by the evidence and not denied by Mrs. Roberson. There is no testimony in the record contrary to these facts, except for the testimony of the respondent company's officer who testified that there is nothing in the records of the respondent company to indicate the option was included in the policy. However, the company did not have a copy of the policy and had no record with reference to its issuance originally and the facts as established by the plaintiff's witnesses. The company's records merely showed the payment of the premiums due and the provisions of the face of the

policy without any reference to the insert. The respondent admits that it has nothing but its records to rely on and contends that on assuming obligation of the policy it should not have contained the special provision which is ordinarily included in a Juvenile Estate Builder policy. The respondent claims that from their records, the policy when issued was intended to be a Dollar A Day policy and not a Juvenile Estate Builder policy.

Mrs. Viola Roberson, the agent, that admittedly sold the policy to the petitioner, Wheeler, could not recall details of the investment provisions of the policy, but she did "remember it was a good policy and matured in a certain number of years, and it was supposed to have had a nice return for your investment. * * *"

Further, Mrs. Roberson testified:

"Q. * * *. From your experience with these policies, would the sum of $37,500 seem consistent with the investment return as offered to Mr. Wheeler?

"A. I think so.

"Q. From your conversations with him, he could conceivably anticipate this return?

"A. The $37,500?

"Q. Yes.

"A. Yes, in 15 years?

*   *   *   *   *   *

"Q. Did you personally deliver this policy to Virgil Wheeler or not?

"A. I think I did and explained it again."

■ Having claimed the defense of error or mistake the respondent company has the burden of proving its contention. The general rule is:

"If plaintiff proves sufficient facts to make out a prima facie case, or if defendant admits all the facts necessary to establish such a case, the burden is then on defendant to prove all matters of affirmative defense set up by it; such as the fact of forfeiture of the policy, or to adduce evidence in rebuttal of plaintiff's prima facie case, especially with regard to matters which are peculiarly within its knowledge." 46 C.J.S. Insurance § 1316.

"The burden of proof was upon the appellant company, having admitted the issuance of the policy sued on, to show its invalidity * * *." National Life & Accident Insurance Co. v. Robinson, 181 Ark. 1, 24 S.W.2d 878.

■ Furthermore, if the contract of insurance contains ambiguity, the provisions of the policy must be most strictly construed against the insurer, and where there are conflicting provisions in the policy, the one most favorable to the insured will be given effect.

"[I]t is a well established principle of law that, in the interpretation or construction of contracts, the construction the parties themselves have placed on the contract is entitled to great weight, and will generally be adopted by the courts in giving effect to its provisions. This is especially true in case of ambiguity in the written contract. Two of our recent cases to this effect are: Temple Cotton Oil Co. v. Southern Cotton Oil Co., 176 Ark. 601, 3 S.W.2d 673, and Webster v. Telle, 176 Ark. 1149, 6 S.W.2d 28." National Equity Life Insurance Co. v. Bourland, 179 Ark. 398, 16 S.W.2d 6; Craig v. Golden Rule Life Insurance Co., 184 Ark. 48, 41 S.W.2d 769.

■ From the facts, ore tenus testimony, exhibits, depositions and stipulation of parties, the Court concludes that the inserted provision at issue was originally included and inserted in the policy and intended to become a part of the policy issued by the company to the petitioner, Virgil Wheeler, and the respondent should be liable to the petitioner in accordance with the option as provided by the policy if and when at the maturity date of the policy, all provisions have been met by the petitioner, Virgil Wheeler.

This memorandum includes the findings and conclusions of Rule 52 of the Federal Rules of Civil Procedure. An order will be entered in accordance with this opinion.