**AMERICAN PUBLIC LIFE INS. CO.,**
**Appellant,**

v.

**Virgil WHEELER, Appellee.**

**Virgil WHEELER, Appellant,**

v.

**AMERICAN PUBLIC LIFE INS. CO.,**
**Appellee.**

**Nos. 72–1531, 72–1509.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1973.

Decided April 13, 1973.

Robert J. Donovan, Marianna, Ark., for Wheeler.

Ronald A. May, Little Rock, Ark., for American Public Life Ins. Co.

Before HEANEY and ROSS, Circuit Judges, and BENSON, Chief District Judge.

ROSS, Circuit Judge.

Virgil Wheeler brought an action for a declaratory judgment against American Public Life Insurance Company (American Public) in an Arkansas state court, to interpret a policy of insurance issued to Wheeler by American Public's predecessor, Washington Standard Life Insurance Co. (Washington Standard).[1] Upon removal to the United States District Court for Arkansas under 28 U.S. C. §§ 1441(a) and 1332(a), the lower court rejected American Public's defenses to the policy and ordered that it be enforced as written. No attorneys fees were awarded. 344 F.Supp. 950 (E.D. Ark. 1972). Both parties appeal.

The policy in question was initially issued to Wheeler by Washington Standard on December 4, 1958, as Policy No. 2679. It was sold to Wheeler by one Mrs. Roberson, an agent of Washington Standard at that time, who took Wheeler's application and later delivered the policy to him after the insurance company had approved his application. The policy was subsequently destroyed by fire sometime in 1962, and a duplicate copy was issued to Wheeler on March 8, 1963, by Washington Independent Life Insurance Company (Washington Independent), the company which took over the control of Washington Standard subsequent to the initial issuance of the policy. This policy on the life of Virgil Wheeler, provides for a $7,500.00 death benefit and an endowment benefit at the

maturity date (December 4, 1973) of $1,700.00. The policy also includes what is generally referred to as a "Dollar A Day" Plan under which Wheeler had the option to either receive $100.00 annually; to apply that sum against annual premiums; or to authorize the insurance company to invest the sum for him. Wheeler chose the option of having the insurance company invest the $100.00 annual sum as provided by the terms of the policy, and the company has made such investment on his behalf throughout the years following the initial issuance of the policy. That investment was valued at over $1,500.00 at the time of the trial below. The annual premium for all of the Benefits and the Investment Plan was $365.00, hence the name "Dollar A Day" Plan.

The controversy between Wheeler and American Public relates to the amount which Wheeler will be entitled to elect as a settlement option on the maturity date of the policy, December 4, 1973. Wheeler contends that according to a provision in the policy, contained in an inserted page designated "Insert-JEB-1" he is entitled to a guarantee of $37,500.00 on the maturity date. The insert is as follows:

"GUARANTEED OPTIONS OF SET-TLEMENT ON MATURITY DATE FOR EACH $1,000 OF ORIGINAL AMOUNT INSURED

If the Insured is living on the Maturity Date and if all premiums have been paid and there is no indebtedness to the Company hereon, the Insured, upon surrender of this policy may, in lieu of receiving the Ultimate Amount as provided on the first page hereof, select one of the following options:
Option 1.   .   .   .
Option 2.   .   .   .

---

1. Washington Standard Life, the initial issuer of this policy was subsequently taken over by Washington Independent Life Ins. Co., the latter assuming all control and obligations of the former, including the policy in issue. American Public, appellant herein, assumed the control and obligations of Washington Independent through a bulk reinsurance agreement entered into on January 2, 1965, and continues to date as the insurer under the policy.

Option 3. Receive in cash the Ultimate Amount of . . . $5,000 or

Option 4. . . .

. . ."

This provision appears on the LOAN PROVISION page of the policy. Wheeler's contention is that since the Face Amount of his policy is $7,500.00 he is entitled, under Option 3, to 7.5 multiplied by $5,000.00, or $37,500.00 in cash on the maturity date. In addition, an inserted sheet explaining the "Dollar A Day" Investment Plan is included in the duplicate policy and contains a table for the purpose of illustrating and explaining the "Dollar A Day" Plan, as follows:

"The following table is for illustration purposes only and is based on the assumption that the annual appreciation percentage outlined below will be constant:

| Percent of Annual Appreciation | Amount Paid Into Fund | Amount of Appreciation | Value At End of 15 Years |
|---|---|---|---|
| 0 | $1400.00 | $ 0 | $ 1,400.00 |
| 5 | 1400.00 | 657.86 | 2,057.86 |
| 10 | 1400.00 | 1,627.25 | 3,072.25 |
| 20 | 1400.00 | 5,703.51 | 7,103.51 |
| 30 | 1400.00 | 15,228.53 | 16,628.53 |
| 40 | 1400.00 | 37,141.93 | 38,541.93 |

It is understood that the percentage of annual appreciation may vary throughout the 15 years and the above table is designed and presented solely for the purpose of explanation."

The primary contention of American Public is that "Insert-JEB-1" was clearly inserted in the "Dollar A Day" Plan by mistake and that the most Wheeler is guaranteed at the end of the 15 years is $1,700.00 as provided by the policy without reference to the "Insert." The main policy also contained a provision generally referred to as an Incontestability clause which reads as follows:

". . .

This policy shall be incontestable after it has been in force during the lifetime of the Insured for a period of two years from its Policy Date, except for non-payment of premiums; . . ."

The trial court found that the incontestability clause barred American Public's assertion of mistake in this action, but went on to state that "assuming, but not deciding that the respondent is entitled to the defenses it claims" there was insufficient evidence offered to show that in fact any mistake had occurred. 344 F.Supp. at 954–955. In so holding, the district court found that the "Insert-JEB-1" provision was originally in the policy as issued to Wheeler and was intended to be a part thereof and concluded that the policy should be enforced in accordance with that option. On this appeal American Public contends that the court erred in holding that the incontestability clause should bar the assertion by it of a mistake, and in its finding that no mistake had in fact occurred. Wheeler appeals from the failure of the district court to award him attorneys fees under Ark.Stats.Ann. 66–3239 (Repl.1966). We affirm the judgment of the trial court and award attorneys fees.

■■ We have carefully examined the record and the briefs and conclude that there was sufficient evidence to justify the trial court's determination that "Insert-JEB-1" was included in the original policy issued to Wheeler. However, we believe that the finding that "Insert-JEB-1" was "intended to become a part of the policy issued by the company to the petitioner, Virgil Wheeler," 344 F.Supp. at 955, was clearly erroneous to the extent that it implies that Washington Standard intended to include the insert in the policy.

The evidence is clear and uncontradicted that this form was intended to be used only in "Juvenile Estate Builder" policies sold to parents for their children under the age of 14 years. These policies contemplated premium payments to the insurance company for a period in excess of 40 years instead of the 15 years of premium payments provided in the "Dollar A Day" Plan sold to Wheeler. It is not difficult to understand the higher guaranteed value at maturity of the Juvenile Estate Builder policy when

viewed in this light and it defies all logic to assume that the insurance company intended to use this form in a 15 year "Dollar A Day" policy.

On the other hand, the evidence does warrant the finding that Wheeler thought he was buying the exact policy that was issued and that the agent explained the policy to him in a manner which caused him to believe it would have a value of $37,500.00 at maturity.

Assuming, without deciding, that the pleadings of American Public would have permitted the trial court to reform the insurance contract because of mistake, we do not believe that under the law of Arkansas, reformation was permissible under the proof adduced in this case. In York v. McKamey, 175 Ark. 1170, 300 S.W. 371, 372 (1927), the Supreme Court of Arkansas stated the rule as follows:

> "It is the rule of this court that in a suit to reform a written instrument, the evidence must be clear, unequivocal, satisfactory, and decisive, and that a mere preponderance of the evidence is not sufficient, and that reformation cannot be had, except for mutual mistake, or mistake of one party accompanied by fraud or other inequitable conduct of the other party."

*See also* Robinson v. Home Indemnity Co., 438 F.2d 1273, 1275 (8th Cir. 1971); Weiss v. Turney, 173 F.2d 617, 619 (8th Cir. 1949); Calvert Fire Ins. Co. v. Hardwicke, 232 Ark. 466, 338 S.W.2d 329, 330 (1960); Corey v. Mercantile Ins. Co., 205 Ark. 546, 169 S.W.2d 655, 658–659 (1943); Barton-Mansfield Co.

v. Wells, 183 Ark. 174, 35 S.W.2d 337, 339 (1931).

█ In this case the evidence is clear that there was not a mutual mistake.[2] The insurance company made a unilateral mistake in including the Insert-JEB-1 in the policy. But there was uncontradicted evidence from Wheeler and Mrs. Wheeler that Wheeler only purchased the policy upon being assured by the agent that the guaranteed value of the policy at maturity would be $37,500.-00. That such an amount was reasonable to expect was confirmed by the agent's testimony. Under these circumstances neither mutual mistake nor mistake of one party coupled with fraud or inequitable conduct of the other party could be found, and American Public was not entitled to reformation. *See* Weiss v. Turney, *supra*, 173 F.2d at 618–619; Greenhaw v. Combs, 74 Ark. 336, 85 S.W. 768, 770 (1905).

Because of the result we have reached on the reformation issue, we do not reach the question of the effect of the incontestability clause.

We recognize that the result we have reached is inequitable to American Public and provides a windfall to Wheeler. But this does not alter our obligation to apply the law of the State of Arkansas to the facts of this case.

█ Wheeler correctly argues that he was entitled to attorneys fees under Ark. Stats.Ann. 66–3239 (Repl.1966), and that even though the trial court failed to award the fees, this Court may make the determination. Maryland Casualty Co. v. Turner, 235 Ark. 718, 361 S.W.2d

---

2. As stated in Weiss v. Turney, 173 F.2d 617, 619 (8th Cir. 1949) (applying Arkansas law):
   "To warrant reformation on the ground of *mutual mistake* it must appear that by reason of the mistake *both* parties have done what neither intended; in other words, the instrument must do violence to the understanding of *both* parties." (Emphasis added.)
   *See also* 17 R. Anderson, Couch Cyclopedia of Insurance Law, § 66:25 at 265–267 (1967).

On the other hand:
   "If *one* party is mistaken as to the identity of the subject matter of the bargain, or as to a basic assumption regarding it, other party is usually mistaken as to the first party's state of mind. But such a double mistake, if innocent, is immaterial. A mistake of this sort is always called unilateral since the error on one side is irrelevant." 13 S. Williston, A Treatise on the Law of Contracts, § 1570A at 465 (Jaeger ed.) 1970). (Emphasis added.)

646, 650 (1962). We have examined the record and have concluded that Wheeler is entitled to an attorneys fee of $500.00 for services rendered in trial and on this appeal. In setting this figure, we cannot ignore the inequitable result described in the preceding paragraph.

The judgment of the trial court is affirmed but modified to include the award of attorneys fees as hereinbefore set forth.