Harry E. McDERMOTT, Jr.,
Trustee, Appellant,

v.

UNITED STATES, Appellee.

No. 84–2231.

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1985.

Decided April 29, 1985.

Rehearing Denied June 5, 1985.

Harry McDermott, Little Rock, Ark., pro se.

Fletcher Jackson, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before ROSS, ARNOLD and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Harry E. McDermott, Jr. appeals from the District Court's [1] entry of judgment against him, following a bench trial, in his action against the United States to quiet title to 1.5 acres of land abutting the Arkansas River in Pulaski County, Arkansas. McDermott purchased that land in 1974 from Wayne Clark, Jr. For reversal McDermott argues that the District Court erred in concluding that (1) Clark's conveyance of the 1.5 acres to the United States in 1970 did not result from a mutual mistake or a mistake on Clark's part caused by the inequitable conduct of representatives of the federal government; and (2) equitable estoppel should not bar the federal government from now asserting title to the land.

## I. Background

Sometime prior to 1967, Clark purchased several tracts of land in Pulaski County abutting the Arkansas River, some of which were subject to a 200-foot wide easement held by the federal government for the purpose of bank stabilization. That easement, labeled tract 100E–1 by the Corps of Engineers, gave the government the right to remove structures and trees and to excavate, dredge, or remove any part or all of the land. Clark had plans to build a "Fort Lauderdale type" subdivision on part of the land that was subject to the easement, so he was concerned that the government might at some time exercise its rights thereunder.

In October of 1967 William Balke, a realty specialist for the Corps of Engineers, informed Clark that the federal government wanted to purchase several tracts of his land to build a park, including tract 200–1, the 1.5 acres now in dispute. Because Clark had no plans to develop the tracts that the government wanted, on May 22, 1968, he offered to exchange those tracts (including tract 200–1), for a release of the bank stabilization easement, and a portion of another government tract, 145–E, not in dispute. Unbeknownst to Clark, the bank stabilization easement (tract 100E–1) overlapped a portion of tract 200–1.

On July 19, 1968, Norman Hairston, another realty specialist for the government, met with Clark to discuss the proposed exchange and showed him a map depicting all of tract 100E–1. This map did not identify tract 200–1, and hence did not reveal the overlap. During later negotiations, however, the government gave Clark's attorney two maps, one which showed the tracts the government wished to obtain (including tract 200–1), and another which showed tract 100E–1. By agreement the government's attorneys and engineers prepared the legal instruments to effectuate the exchange.

On October 1, 1969, Clark executed an "Offer to Sell Real Property," whereby he agreed to exchange fee title to the tracts the government wanted (including tract 200–1) for title to tract 100E–1 and tract 145E. The government accepted the offer on March 25, 1970. On July 20, 1970, the government delivered a quitclaim deed to Clark, and Clark delivered a general war-

---

**1.** The Honorable G. Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

ranty deed to the government. Both deeds were recorded shortly thereafter.

Before the property exchange, Clark had placed a fence along the western boundary of tract 200–1. That fence remained after the exchange, and although the government developed a park in the area west of tract 200–1, it left tract 200–1 unchanged.

On July 31, 1974, Clark conveyed to the appellant, Harry McDermott, Jr., all the property located in tract 100E–1. The title insurance and survey showed that Clark owned all of tract 100E–1, including the portion of 100E–1 that overlaps tract 200–1. McDermott then subdivided the land and in 1975 sold portions of the disputed 1.5 acres to Mr. Fagan and Mr. and Mrs. Greene. Fagan and the Greenes cleared and landscaped the land, and after obtaining permits from the federal government, repaired the riverbank. Fagan also laid a foundation for a house and put in a septic tank. In 1980 the government notified Fagan that he was encroaching on federal land. Upon learning of the government's claim to the land, Clark executed and recorded a "Correctional Deed" which stated that he never intended to convey tract 200–1 to the government. Shortly thereafter the government also notified the Greenes that they were encroaching on federal land.

In 1981 Fagan brought suit against McDermott who in turn brought suit against Clark. The parties settled the suit by having Clark's title insurance company pay Fagan $14,000, with McDermott giving Fagan a $6,800 credit on other land he had purchased from McDermott. Fagan gave title to the land back to McDermott. The present suit by McDermott against the government followed.

## II. Reformation of the Real Estate Agreement Between Clark and the Government

Under Arkansas law a contract may be reformed only for mutual mistake or mistake of one party accompanied by fraud or inequitable conduct of the other party. *American Public Life Insurance*

*Co. v. Wheeler*, 477 F.2d 1019, 1022 (8th Cir.1973) (quoting *York v. McKamey*, 175 Ark. 1170, 300 S.W. 371, 372 (Ark.1927)). To warrant reformation, the evidence must be "clear and convincing." *Harbour v. Sheffield*, 269 Ark. 932, 601 S.W.2d 595, 597 (Ark.Ct.App.1980). McDermott argues that the District Court erred in concluding that Clark's conveyance of tract 200–1 was not the result of a mutual mistake, or a mistake on Clark's part induced by the inequitable conduct of Hairston, the government's real estate specialist.

### A. Mutual Mistake

A mistake is mutual when "by reason of the mistake *both* parties have done what neither intended; in other words, the instrument must do violence to the understanding of *both* parties." *American Public Life Insurance Co.*, 477 F.2d at 1022 n. 2 (quoting *Weiss v. Turney*, 173 F.2d 617, 619 (8th Cir.1949) (applying Arkansas law)). The District Court found that although Clark may have mistakenly conveyed tract 200–1 to the government, the government fully intended to receive tract 200–1 in the exchange. This intent, the court reasoned, was evident from the fact that documents the government prepared (the Offer to Sell, the Notice of Acceptance, the Right of Entry, and the General Warranty Deed) all specify that the government was to receive tract 200–1. Moreover, the court noted that tract 200–1 always appears first in the list of tracts to be conveyed to the government, and the description given of 200–1 is simple and concise, ending with the words "1.5 acres more or less." Finally, the court found no inconsistency in the way the land exchange was handled. McDermott argued that if the government had intended to take title to tract 200–1, it would have excluded that portion of 200–1 that overlaps 100E–1 when it released its easement in 100E–1. The court rejected this argument reasoning that since the government was receiving *fee title* to 200–1 and was releasing an *easement* in 100E–1, there was no need to exclude that portion of 100E–1 which overlaps 200–1.

██ The District Court's finding that the government intended to receive 200–1 in the exchange cannot be set aside unless it is clearly erroneous. *See* Fed.R.Civ.P. 52(a). We conclude that the finding is not clearly erroneous and therefore affirm the District Court's conclusion that the conveyance of 200–1 was not a mutual mistake. McDermott failed to meet his heavy burden of proving such a mistake by "clear and convincing" evidence. *Harbour v. Sheffield*, 601 S.W.2d at 597.

### B. Unilateral Mistake Caused by Inequitable Conduct of the Other Party

██ McDermott argues alternatively that the District Court should have found that the government's inequitable conduct caused Clark to convey tract 200–1 by mistake. Specifically, McDermott notes that Hairston failed to inform Clark about the overlap and assured him that after the exchange he would own all of tract 100E–1.

The District Court found that the government had engaged in no inequitable conduct in its dealings with Clark, *i.e.*, that Hairston's failure to alert Clark to the existence of the overlap was not inequitable.

We hold that this finding is not clearly erroneous. Clark never inquired about an overlap, and it cannot be said that the government concealed the overlap from him. Clark was represented by counsel in his dealings with the government and was given maps and descriptions of tracts 200–1 and 100E–1 from which he could have discovered the overlap, had he examined them with care. As the District Court observed, Clark "wasn't paying an awful lot of attention" in making the land exchange. Trial Transcript at 76.

Furthermore, the evidence does not support McDermott's contention that Hairston assured Clark that Clark would receive all of tract 100E–1 after the transfer. During Clark's deposition the following exchange occurred:

Q. Mr. Clark, after the exchange with the Government in 1970, did you have complete ownership of all the riverfront land from the northwest corner of your property...?

A. That was my understanding.

Q. Was that the representations (sic) made to you by the Government people?

A. Again, *insofar as I understood it*, that was, that was the exchange that we made.

Clark Deposition at 12–13 (emphasis added). Clark stopped short of saying that the government told him that he would own all of 100E–1 after the exchange. Additionally, at trial McDermott's attorney repeatedly asked Hairston whether he told Clark that Clark would own all of tract 100E–1 after the exchange, and Hairston consistently responded that he told Clark only that the government's *easement* would be fully released after the exchange. The District Court's finding that the government did not engage in any inequitable conduct cannot be said to be clearly erroneous.

### III. Equitable Estoppel

McDermott contends that the government should be barred by the doctrine of equitable estoppel from asserting title to the land here in dispute. We note initially that neither the Supreme Court nor this Court yet has held that the doctrine of equitable estoppel can be applied against the federal government. *See I.N.S. v. Miranda*, 459 U.S. 14, 19, 103 S.Ct. 281, 284, 74 L.Ed.2d 12 (1982); *Abbott v. Harris*, 610 F.2d 563, 565 (8th Cir.1979); *Leimbach v. Califano*, 596 F.2d 300, 305 (8th Cir.1979). The Supreme Court, however, has stated that even if equitable estoppel is applicable against the government only a showing of "affirmative misconduct" will suffice. *I.N.S. v. Miranda*, 459 U.S. at 17, 103 S.Ct. at 282; *I.N.S. v. Hibi*, 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973).

McDermott argues that the government engaged in affirmative misconduct in the following ways. First, he states that "[t]he actions of the Corps' negotiators [Hairston and Balke] constitute affirmative misconduct because they induced Mr. Clark to enter into a transaction by assuring him he would receive all of tract 100E–1 in a

simultaneous transaction when it was actually the Corps' intention to end up with one acre of tract 100E–1." Appellant's Reply Brief at 8. Second, he states that although Clark and the government agreed that the land exchange would be simultaneous, the government dated its quitclaim deed to make it appear that the government deeded tract 100E–1 first to Clark, who then deeded back tract 200–1 to the government. Third, McDermott asserts that the government's actions after the land exchange substantiated its assurances to Clark that he owned all of tract 100E–1. These actions are (1) the government's failure to remove the fence Clark had placed on the western border of tract 200–1; (2) the government's failure to develop tract 200–1 for a nine year period; and (3) the government's issuance of permits to Fagan and the Greenes allowing them to repair the riverbank area located in tract 200–1.

### A. The Alleged Assurances by Hairston and Balke

As previously discussed, the evidence does not support McDermott's contention that Hairston assured Clark that he would own all the property situated in tract 100E–1 after the exchange. Clark did not state that such an assurance was made and Hairston testified that he only assured Clark that the government's easement would be fully released after the exchange. That easement in fact was fully released. Moreover, McDermott has not pointed to any evidence to support his contention that Balke assured Clark that he would own all the property in tract 100E–1 after the exchange.

### B. The government's Pre-dating of the Deed

On January 26, 1970, the Secretary of the Army in Washington, D.C., signed and dated the quitclaim deed to Clark. On July 20, 1970, Clark signed and dated his general warranty deed and delivered it to the government, and on that same date the government delivered the pre-dated quitclaim deed to Clark. McDermott now ar-

gues that the government's pre-dating of the quitclaim deed constitutes affirmative misconduct because the pre-dating shows that the government attempted to defeat the agreement it reached with Clark that the land exchange would be simultaneous.

■ This argument is meritless. Whether the government pre-dated the quitclaim deed is irrelevant, because under Arkansas law title to real property passes on the date the deed is delivered. *See Wilson v. McDaniel,* 247 Ark. 1036, 1038, 449 S.W.2d 944, 946 (Ark.1970). The government's advance preparation of the quitclaim deed cannot rationally be viewed as any sort of misconduct.

### C. The Government's Later Actions

Since the government made no assurances to Clark that he would own all the property in tract 100E–1 after the exchange, we necessarily reject McDermott's argument that the government's later actions can be viewed as substantiating its assurances. Further, we agree with the District Court that the government's failure to remove Clark's fence and its failure to develop tract 200–1 for nine years do not constitute "affirmative misconduct." As the District Court found, the government intended to leave tract 200–1 as a buffer between the nearby park and adjacent property. The issuance of permits to Fagan and the Greenes allowing them to repair the riverbank on tract 200–1 was at most a negligent act caused by the Corps' failure to check title to 200–1 before issuing the permits. In any event, that failure to check title could not have harmed McDermott, who had sold portions of the disputed land to Fagan and the Greenes several years before they obtained the permits.

■ In short, McDermott has failed to show "affirmative misconduct" on the part of the government. Accordingly, we do not reach the question of whether the doctrine of equitable estoppel is applicable against the federal government.

The judgment of the District Court is affirmed.